UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HRISTO "CHRIS" GOCHEV, a married individual, and KAISER ENTERPRISES, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>　　　　　　　Defendant. | Case No.: 2:22-cv-00159-BJR<br><br>FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION AND RELIEF REQUESTED**

Plaintiffs Hristo "Chris" Gochev ("Gochev") and Kaiser Enterprises, LLC ("Kaiser") filed this lawsuit against Mr. Gochevs' homeowners' insurance company, First American Property & Casualty Insurance Company ("First American") alleging Breach of Contract, Common Law Bad Faith, Consumer Protection Act ("CPA") and Washington Insurance Fair Conduct Act ("IFCA").

First American seeks dismissal of all claims on the basis that:

1.　　The subject First American homeowners' policy does not cover Mr. Gochev's residence;

/ / /

Page 1 -　FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

2. First American does not insure Mr. Gochev's business, Kaiser Enterprises, LLC, or business property belonging to Kaiser; and

3. The First American homeowners' policy does not insure vehicles belonging to Mr. Gochev or Kaiser.

Mr. Gochev and Kaiser do not allege that First American wrongfully denied coverage or underpaid policy benefits. (Complaint p. 2 lines 20-21.) Instead, plaintiffs allege First American owes them extracontractual damages for the loss of use of "storage sheds" used by Kaiser, that Kaiser lost business income, that First American damaged Mr. Gochev's credit and caused Mr. Gochev emotional distress.[1]

## FACTS

On January 12, 2021, a tree fell onto property belonging to Mr. Gochev and/or his excavation company, Kaiser. This claim was reported to First American about a week later, on January 20, 2021. (Decl. Monroe ¶3.) First American acknowledged receipt of the claim that same day. (Id.)

First American does not, and never did, insure the property where this loss occurred. First American insures only Mr. Gochev's former residence located at 21527 Poplar Way, Brier, WA 98036 (the "Insured Location"). Mr. Gochev's ex-wife lives at the Insured Location.[2] Mr. Gochev moved out of the Insured Location in 2018 or 2019 (2-3 years before this loss) and into his current residence at 21508 SR 9 SE, Woodinville, Washington[3] (the "Loss Location").

Mr. Gochev testified that "all the stuff the trees destroyed" was business property:

Q. What do you store at the State Route 9 (Loss Location) address for your business property?
A. There's a couple excavators there, there's a few trailers, all of the stuff that the trees destroyed, just miscellaneous tools.

---

[1] Plaintiffs' Third Rule 26(a) Supplemental Disclosure.

[2] Gochev p. 10 lines 1-5; p. 10 lines 15-23.

[3] This same location was previously reported as 6557 216th St. SE, Woodinville, WA 98072. P. 10 lines 21 – p. 11 line 11.

Page 2 - FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

Q. What do you mean by all of the stuff the trees destroyed?
A. The bus, the box truck, the containers that got damaged, all of the tools.[4]

\*\*\*

Q. Correct me if I'm wrong, but what I thought I heard you say, Mr. Gochev, is that where the trees fell, they fell on a bus, a box truck, a couple containers, and those items were items that you used for work, you also use the same thing to take care of the property in your home.
A. Correct.
Q. Is that a fair statement?
A. Yes.[5]

Prior to Mr. Gochev's Examination Under Oath, his public adjuster represented to First American that all property being claimed was personal, not business use. (Decl. Monroe Ex. 4.) After receiving the inventory of claimed property from Mr. Gochev, First American issued its first Reservation of Rights letter. (Decl. Monroe Ex. 3.) First American then invoked its right under the Policy to take Mr. Gochev's Examination Under Oath. (Decl. Monroe Ex. 2.) This examination was requested on April 12, 2021 (three months after the loss) and initially scheduled by First American for May 12, 2021. Following several postponements, Mr. Gochev's Examination Under Oath eventually took place on August 18, 2021. (Decl. May Ex. 1.)

First American completed its investigation, and issued its coverage determination, on September 30, 2021. (Decl. Monroe Ex. 6.) First American's second, and final claim payment, was issued to Mr. Gochev on October 4, 2021. (Decl. Monroe ¶ 10.) First American paid Mr. Gochev a total of $22,581.99 on this claim. (Id.)

## POLICY

Plaintiff Hristo Gochev is the Named Insured under First American homeowners' policy number WAPH 145937 (the "Policy"). The Policy insures the location at 21527 Poplar Way, Brier, Washington, 98036. (Decl. Monroe ¶5.) The Policy does not insure Mr. Gochev's residence where this loss occurred.

---

[4] EUO of Gochev, p. 22.

[5] EUO of Gochev, p. 23.

Page 3 -   FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

The Policy states, in relevant parts:

**DEFINITIONS**

4. "Business" means:

    a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

\*\*\*

9. "Insured location" means:

    a. The "residence premises";

    b. The part of other premises, other structures and grounds used by you as a residence; and

       (1) Which is shown in the Declarations; or

       (2) Which is acquired by you during the policy period for your use as a residence;

\*\*\*

10. "Motor vehicle" means:

    a. A self-propelled land or amphibious vehicle; or

    b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

\*\*\*

15. "Residence premises" means:

    a. The one family dwelling where you reside;

    b. The two, three or four family dwelling where you reside in at least one of the family units; or

    c. That part of any other building where you reside;

    and which is shown as the "residence premises" in the Declarations.

    "Residence premises" also includes other structures and grounds at that location.

\*\*\*

**SECTION I – PROPERTY COVERAGES**

**B. Coverage B - Other Structures**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

Page 4 -  FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

    **2.** We do not cover:

\*\*\*

        **c.** Other structures from which any "business" is conducted; or

        **d.** Other structures used to store "business" property.  However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

\*\*\*

**C. Coverage C - Personal Property**

\*\*\*

    **2. Limit For Property At Other Residences**

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

        **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

        **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

\*\*\*

    **3. Special Limits Of Liability**

    The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

\*\*\*

        **i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

\*\*\*

    **4. Property Not Covered**

    We do not cover:

\*\*\*

        **c.** "Motor vehicles".

            **(1)** This includes:

                **(a)** Their accessories, equipment and parts; or

Page 5 -   FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

  **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

  The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

 **(2)** We do cover "motor vehicles" not required to be licensed for use on public roads or property which are:

  **(a)** Used solely to service an "insured's" residence; or

  **(b)** Designed to assist the handicapped;

\*\*\*

**D. Coverage D – Loss Of Use**

 \*\*\*

 **1. Additional Living Expense**

  If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

 \*\*\*

**E. Additional Coverages**

 **1. Debris Removal**

  **a.** We will pay your reasonable expense for the removal of debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss.

  This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional five percent of that limit is available for such expense.

 \*\*\*

**SECTION I - CONDITIONS**

 \*\*\*

**B.**  **Duties After Loss**

  In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties I prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

 \*\*\*

Page 6 -  FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us t omake copies; and

   c. Submit to examination under oath, while not in the presence of another "insured" and sign the same;

\*\*\*

## POLICY COVERAGE

First American paid all amounts due and owing under the policy of insurance. Plaintiffs do not dispute this fact. (Complaint p. 2 lines 20-21.)

The "residence premises" is defined in the Policy as the one family dwelling where you reside and is shown as the "residence premises" in the Declarations. Only 21527 Poplar Way, Brier, WA 98036 is shown as the "residence premises" in the Declarations.

First American paid the Policy limit for "Personal Property at Other Residences" ($19,125.70), the limit for debris removal ($956.29) and the limit for Business Property ($500.00). First American also made an accidental $2,000 payment for storage rental, mistakenly believing this loss occurred at the insured location. First American has not requested that this $2,000.00 payment be refunded. Therefore, the total claim payment of $22,581.99 exceeds First American's contractual obligations to Mr. Gochev.

| | |
|---|---|
| Policy Limit for Property at Other Residences: | $19,125.70 |
| Debris Removal: | $    956.29 |
| Business Limit: | $    500.00 |
| Storage Trailer | $ 2,000.00 |
| Total | $22,581.99 |

/ / /

/ / /

Page 7 -   FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

Plaintiffs' disclosed expert, Stephen Strzelec, does not dispute that First American paid what it owed under the policy. In fact, according to Mr. Strzelec, First American overpaid this claim by $500.00.[6]

**1.    Plaintiff Does Not Allege First American Failed to Pay What it Owed Under the Policy**

### a.    $19,125.70 Limit for Property at Other Residences

The Policy states that the limit for personal property usually located at an insured's residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater.  The Coverage C limit is $191,257.00.  10% of this limit is $19,125.70.  This is the amount paid by First American.

### b.    $500 Limit for Business Property Away From the Residence Premises

The Policy covers property "used primarily for 'business' purposes" away from the "residence premises."  For the same reason that Mr. Gochev's personal property is limited to 10% of the Coverage C limit, business property is limited to $500.00.  This was paid by First American.

### c.    Debris Removal of Covered Property

The Policy covers Mr. Gochev's expenses to remove the debris of covered property if the amount paid, plus the incurred debris removal expense, exceeds the applicable policy limit. Thus, $956.29 was paid for debris removal expenses.

### d.    Motor Vehicles Are Not Covered

Mr. Gochev had several motor vehicles on-premises of various uses and states of repair. A "motor vehicle" is defined in the Policy as a self-propelled land vehicle or any trailer.  A "motor vehicle" is not covered property under the Policy.[7]  Plaintiffs' "motor vehicles" are not covered under this homeowners' policy.

---

[6] According to Mr. Strzelec, First American only owed $22,081.99.  (Decl. May Ex. 1.)

[7] A "motor vehicle" is not excluded under the Policy.  It is not covered property.

Page 8 -   FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

## ARGUMENT AND AUTHORITY

Summary judgment is appropriate where there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party that brings a motion for summary judgment bears the burden of establishing the absence of an issue of material fact. *Id.* Once the moving party has made the requisite showing, the non-moving party bears the burden of establishing that there is a question of fact pertinent to an essential element of his case. *Id.* Summary judgment should be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

Here, there are no facts in dispute regarding the issues presented in this motion.

### 1. First American Did Not Breach its Contract With Mr. Gochev

To state a claim for breach of contract, a plaintiff must allege (1) a duty imposed by the contract that (2) was breached, with (3) damages proximately caused by the breach. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33, 301 P.3d 500 (2013). While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. *Conestoga Servs. Corp. v. Exec. Risk Indem.*, 312 F.3d 976, 981 (9th Cir.2002).

What duty imposed by the contract did First American breach? None. Plaintiffs' agree that First American paid what it owed under the insurance contract. In fact, according to plaintiff's expert, First American overpaid this claim.

In a breach of contract action, the insured is entitled to expectation damages—the amount he or she would have received under the contract but for the breach. *Woo v. Fireman's Fund Ins. Co.*, 150 Wash.App. 158, 208 P.3d 557, 563 (2009) ("The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached.").

Page 9 -   FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

Plaintiff does not dispute that First American paid the full Policy limits. Plaintiffs' expert Mr. Strzelec wrote "This was a simple first party loss where the insured's property was being store [sic] off premises when damaged by trees falling during a windstorm. A simple, covered loss with Policy limitations that claim handlers deal with every day."[8]

An insured may only recover damages up to the policy limits in an insurance breach of contract action. *Polygon N.W. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wash.App. 753, 189 P.3d 777, 789 (2008). Washington law does not, in fact, force insurers to pay for losses that they have not contracted to insure. Rather, the contours of an insurer's coverage obligations are defined by the specific language of the insurance contract interacting with the type of loss suffered by the insured. *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wash. App. 753, 775, 189 P.3d 777, 789 (2008).

Even if it were liable for breaching the insurance contract, which it is not, its maximum liability for damages is limited to the policy limits of the insurance contract. *Kabrich v. Allstate Prop. & Cas. Ins. Co.*, No. CV-12-3052-LRS, 2014 WL 3925493, at *7–8 (E.D. Wash. Aug. 12, 2014), *aff'd*, 693 F. App'x 524 (9th Cir. 2017); *Allstate Prop. and Cas. Ins. Co.*, 134 Wash.App. 163, 139 P.3d 373, 376 (2006). Plaintiffs do not dispute that these limits have been paid.

    **2.**    **First American Did Not Breach a Duty of Good Faith and Air Dealing**

The duty of good faith and fair dealing cannot be breached in the absence of a corresponding breach of a specific contractual provision. *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569–70, 807 P.2d 356, 360 (1991); *Tacoma Promenade*, 45 Fed.Appx. at 622. Further, as a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms. *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 570, 807 P.2d 356, 360 (1991); *Allied Sheet Metal*, 10 Wash.App. at 535–36, 518 P.2d 734; *Creeger Brick & Bldg. Supply Inc. v. Mid–State Bank & Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151 (1989).

---

[8] Decl. May Ex. 2 , p. 31.

Page 10 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

There is an implied duty of good faith and fair dealing in every contract. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. *Metropolitan Park Dist. of Tacoma v. Griffith*, 106 Wash.2d 425, 437, 723 P.2d 1093 (1986); *Lonsdale v. Chesterfield*, 99 Wash.2d 353, 357, 662 P.2d 385 (1983); *Miller v. Othello Packers, Inc.*, 67 Wash.2d 842, 844, 410 P.2d 33 (1966). However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. *Betchard–Clayton, Inc. v. King*, 41 Wash.App. 887, 890, 707 P.2d 1361, *review denied*, 104 Wash.2d 1027 (1985). Nor does it "inject substantive terms into the parties' contract." Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wash.App. 630, 635 n. 6, 700 P.2d 338 (1985). Thus, the duty arises only in connection with terms agreed to by the parties. *See Matson v. Emory*, 36 Wash.App. 681, 676 P.2d 1029 (1984); *Lonsdale v. Chesterfield*, 99 Wash.2d 353, 662 P.2d 385 (1983); *CHG Int'l, Inc. v. Robin Lee Inc.*, 35 Wash.App. 512, 667 P.2d 1127, *review denied*, 100 Wash.2d 1029 (1983); *Miller v. Othello Packers, Inc.*, 67 Wash.2d 842, 843–44, 410 P.2d 33 (1966).

Plaintiffs fail to identify any "duty" that was owed to them by First American, or how First American breached that duty. Therefore, First American is entitled to summary judgment as to plaintiffs' breach of duty of good faith and fair dealing claim.

### 3. Plaintiffs Cannot Establish a Claim for Common Law Bad Faith

To prevail on a common law bad faith claim, the insured must show that the breach of the insurance agreement "was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn. 2d 478, 484 (2003). Mr. Gochev must also show that the alleged breach proximately caused the insured's damages. *Id*. In order to establish bad faith, an insured is required to show not only that there was a breach, but that the breach was unreasonable, frivolous, or unfounded.' " *Id.* (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 560, 951 P.2d 1124 (1998)).

Page 11 - FIRST AMERICAN PROPERTY & CASUALTY
INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

It has long been held by Washington courts that there is no bad faith as long as the insurer has a reasonable basis for its claims decision.  *Smith v. Safeco Ins. Co*, 150 Wn.2d 478, 78 P.3d 1274 (2003); *American States v. Symes of Silverdale*, 150 Wn.2d 462, 78 P.3d 1266 (2003); *Overton v. Consol Ins. Co*, 145 Wn.2d 417, 38 P.3d 322 (2002); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 951 P.2d 1124 (1998); *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 928 P.2d 1127 (1996); *Miller v. Indiana Ins. Co.*, 31 Wn. App. 475, 479, 642 P.2d 769 (1982); *Transcontinental Ins. Co. v. Washington Public Utilities Dist.*, 111 Wn.2d 452, 470, 760 P.2d 337 (1988); *Starczewki v. Unigard Ins. Co.*, 61 Wn. App. 267, 810 P.2d 58 (1991);

First American contacted Mr. Gochev the day after this claim was reported and provided Mr. Gochev with a form to list all claimed property.  (Decl. Monroe ¶3.)  Mr. Gochev provided a list of claimed items March 3, 2021.  (Decl. May Ex. 2.)  This list contained several vehicles and other equipment that appear to be for business use only, such as:

- 3 55 gallon drums of diesel engine oil
- Road work and other flagger signs
- Tracked dump truck
- Ram 5500 truck exhaust system
- BMW 740i
- 40 foot LPG city bus
- Box truck
- Fuel truck
- Diesel engine
- Dump truck muffler
- Mobile welder/generator/compressor

Plaintiffs' public adjuster emailed First American on March 19, 2021 claiming that these items were all for "personal use".  (Decl. Monroe Ex. 4.)  First American had reasonable doubts that these items were not used in plaintiff Kaiser's excavation business, so on April 12, 2021,

Page 12 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

First American requested plaintiff's examination under oath. Mr. Gochev testified these items were used for his business.[9] First American also discovered that plaintiffs made claims under their commercial auto and business policies.

### 4. Plaintiffs' IFCA Claim Fails Absent Wrongful Denial of Coverage or Underpayment of Benefits

The IFCA statute, RCW 48.30.015(1), requires that an insured prove its insurance claim was "unreasonably denied." IFCA explicitly creates a cause of action for first party insureds who were "unreasonably denied a claim for coverage or payment of benefits." RCW 48.30.015(1); *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash. 2d 669, 680, 389 P.3d 476, 481 (2017). Plaintiffs do not allege wrongful denial or underpayment of benefits. Thus, the IFCA claim fails as a matter of law. IFCA does not create an independent cause of action solely for violations of the Washington Administrative Code or other regulatory violations. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash. 2d 669, 684, 389 P.3d 476, 483 (2017).

Further, the mandatory 20-day IFCA pre-suit notice was ineffective. The express purpose of the 20-day notice is to require that the insured tell their insurer what the insurer must do to avoid suit, and to give the insurer 20 days to fix the alleged wrongful denial or underpayment of benefits. Absent this right to remedy the insured's complaint, the pre-suit notice serves no purpose. RCW 48.30.015(1) states:

> (a) Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner....
>
> (b) If the insurer fails to resolve the basis for the action within the twenty-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice.

---

[9] Decl. May Ex. 1, Gochev Examination Under Oath p. 22 and p. 23.

Page 13 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON  97210
(503) 224-0055 · FAX (503) 222-5290

> (c) The first party claimant may bring an action after the required period of time in (a) of this subsection has elapsed.
>
> (d) If a written notice of claim is served under (a) of this subsection within the time prescribed for the filing of an action under this section, the statute of limitations for the action is tolled during the twenty-day period of time in (a) of this subsection.

This 20-day notice requirement is a mandatory prerequisite to bringing suit under IFCA. Failure to satisfy IFCA's pre-suit notice provision mandates dismissal of an IFCA claim. The RCW mandates dismissal of an IFCA claim that a plaintiff brings without giving notice. *Norgal Seattle P'ship v. Nat'l Sur. Corp.*, No. C11–720RSL, 2012 U.S. Dist. LEXIS 55256, at *10–12, 2012 WL 1377853 (W.D. Wash. Apr. 19, 2012); *Hiller v. Allstate Prop. & Cas. Co.*, No. 11–cv–291–TOR, 2012 U.S. Dist. LEXIS 84862, at 24–25, 2012 WL 2325603 (E.D. Wash. Jun. 19, 2012); *see also Polygon Northwest Co. v. Nat'l Fire & Marine Ins. Co.*, No. C11–92Z, 2011 U.S. Dist. LEXIS 56408, at 5 n. 3, 2011 WL 2020749 (W.D. Wash. May 24, 2011) (dismissing IFCA claim, as an alternative holding, where Plaintiff failed to wait 20 days after giving notice before suing). Like those courts, this court agrees that IFCA's pre-suit notice provision is a mandatory condition precedent to an IFCA lawsuit.

**5.    Plaintiffs' CPA Claim Also Fails**

In order to prove a CPA claim, plaintiffs must establish the five elements set out in *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). A failure to establish *all five* elements of the *Hangman Ridge* test requires the court to dismiss the CPA claim. *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553, 825 P.2d 714 (1992); *Van de Grift v. Skagit County*, 59 Wn. App. 545, 800 P.2d 375 (1990). The five *Hangman Ridge* elements are as follows:

1. An unfair or deceptive act or practice;
2. Occurring in trade or commerce;
3. That impacts the public interest;

Page 14 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

  4. Injury to his business or property; and

  5. The injury was proximately caused by the unfair or deceptive act

*Hangman Ridge*, 105 Wn.2d at 784-785.

  The question of whether an act or practice is actionable under the CPA is a question of law. *Dombrosky*, 84 Wn. App. 245; *Blake v. Federal Way Cycle*, 40 Wn. App. 302, 309, 698 P.2d 578 (1985); *Keyes v. Bollinger*, 31 Wn. App. 286, 640 P.2d 1077 (1982).

  An insured may establish a per se unfair trade practice under the CPA by demonstrating a violation of RCW 48.30.010 based on a violation of WAC 284-30-330. *See Industrial Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520 (1990). *However, even where it is found that an insurer made a technical violation of WAC 284.30 et al.*, an insurer's reasonable conduct is a defense to a claim of unfair act or practice under the CPA. *Starczewski v. Unigard Ins. Co.*, 61 Wn. App. 267, 810 P.2d 58 (1991); *Transcontinental*, 111 Wn.2d 452; *McLanahan v. Farmers Ins. Co. of Wash.*, 66 Wn. App. 36, 831 P.2d 160 (1992) (underline added).

  As an element of every bad faith or CPA action, however, an insured must establish it was harmed by the insurer's bad faith acts. *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 389, 823 P.2d 499 (1992) ("a showing of harm is an essential element of an action for bad faith handling of an insurance claim"); *Industrial Indem. Co. v. Kallevig*, 114 Wash.2d 907, 920, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (in CPA actions, plaintiff must show, among other factors, an unfair or deceptive act or practice which "causes injury to the party in his business or property").

  *Coventry Associates v. American States Ins. Co.*, 136 Wn.2d 269, 276-277, 961 P.2d 933, 935-936 (1998). Washington courts have held that emotional distress type injuries do not constitute damages under the CPA. *Physicians Ins. v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993). Also, plaintiffs' attorneys' fees in and of themselves do not constitute actual injury to business or property. *Sign-O-Lite Signs*, 64 Wn. App. 553.

/ / /

/ / /

Page 15 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

Plaintiff cannot show any unfair or deceptive act by First American, nor any injury or damage to business or property proximately caused by an alleged action or inaction of First American. Accordingly, plaintiff's CPA claim is without merit and must be dismissed.

## CONCLUSION

For the reasons set forth above, based upon the undisputed facts of this case, plaintiffs' claims must be dismissed as a matter of law.

DATED this 14th day of August, 2023.

KILMER, VOORHEES & LAURICK, P.C.

*/s/ Robert S. May*
Robert S. May, WSBA No. 36116
2701 NW Vaughn Street, Suite 780
Portland OR 97210
(503) 224-0055
rmay@kilmerlaw.com
Of Attorneys for Defendant

Page 16 - FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290

## **CERTIFICATE OF SERVICE**

I certify that on the 14th day of August, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Ray C. Brooks
WSBA No. 37768
Brooks Law Firm
8201 164th Avenue, NE, Suite 200
Redmond WA 98052
(425) 296-9025
ray@lawyerbrooks.com

Attorney for Plaintiffs

              /s/ Jennifer Miller
              Jennifer Miller
              Legal Assistant

Page 1 -   CERTIFICATE OF SERVICE

KILMER VOORHEES & LAURICK, P.C.
A PROFESSIONAL CORPORATION
2701 NW VAUGHN STREET, SUITE 780
PORTLAND, OREGON 97210
(503) 224-0055 · FAX (503) 222-5290