UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HRISTO GOCHEV, *et al.*, | |
| Plaintiffs, | Case No. C22-159-MLP |
| v. | ORDER |
| FIRST AMERICAN PROPERTY AND CASUALTY INSURANCE CO., | |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court on Defendant First American Property & Casualty Insurance Company's ("First American") Motion for Summary Judgment. ("First American's Motion"). (Def.'s Mot. (dkt. # 20).) First American seeks summary judgment on Plaintiffs Hristo Gochev and Kaiser Enterprises, LLC's (collectively, "Plaintiffs") claims of: (1) breach of contract; (2) common law bad faith; (3) violations of the Washington Consumer Protection Act ("CPA"); and (4) violations of the Washington Insurance Fair Conduct Act ("IFCA").[1] (*Id.* at

---

[1] First American did not move for summary judgment on Plaintiffs' second cause of action—violations of the insurance regulatory provisions of the Washington Administrative Code ("WAC"). (*See* Compl. (dkt. # 1-2) at ¶¶ 5.1-5.3.) Plaintiffs' complaint distinctly alleges Defendants breached provisions of the WAC

ORDER - 1

1-2.) Plaintiffs opposed First American's Motion (Pls.' Resp. (dkt. # 23))[2], and First American filed a reply (Def.'s Reply (dkt. # 29)). Neither party requested oral argument.

Having considered the parties' submissions, the balance of the record, and the governing law, First American's Motion (dkt. # 20) is GRANTED in part and DENIED in part, as further explained below.

## II.  BACKGROUND

### A.  Factual and Procedural Background

First American issued a Homeowners Policy, No. WAPH 145937, to Mr. Gochev (the "Policy"), insuring a residence located in Brier, Washington, in effect from April 30, 2020, to April 30, 2021. (Monroe Decl. (dkt. # 22) at ¶ 5, Ex. 1 (dkt. # 22-1).) Per the Policy's Declarations page, the insured address is Mr. Gochev's former residence, which he moved out of between 2018 and 2019.[3] (*Id.*, Ex. 1 at 3.) Kaiser Enterprises, LLC ("Kaiser") is not a named insured party under the Policy. (*See id.*) The Policy included personal property coverage up to $191,257. (*Id.*)

On January 12, 2021, a windstorm blew over trees and damaged property belonging to Mr. Gochev, and/or his excavation company Kaiser, at Mr. Gochev's current residence located in Woodinville, Washington. (Am. Gochev Decl. (dkt. # 27) at ¶ 2-3; *see also id.*, Exs. 1-2 (dkt.

---

by "failing to reasonably respond, investigate or acknowledge pertinent communications regarding the claim." (*Id.* at ¶ 5.3.) Neither party addressed this specific cause of action in their briefing.

[2] Plaintiffs' opposition requests summary judgment be granted in favor of Plaintiffs (*see* Pls.' Resp. at 9), but Plaintiffs did not file a cross-motion for summary judgment. In any case, genuine issues of material fact exist as to the reasonableness of First American's claims handling, which precludes summary judgment in favor of Plaintiffs on several of Plaintiffs' claims in this case.

[3] Mr. Gochev's ex-wife lives at the Policy's insured address. (Gochev Examination Under Oath ("EUO") (dkt. # 21-1) at 10:1-5, 10:15-23.)

ORDER - 2

## 27-1, 27-2).) Multiple trees landed on two of Mr. Gochev's vehicles and on a hollowed-out bus Mr. Gochev used as a storage container. (Am. Gochev Decl. at ¶ 4; *see also id.*, Exs. 1-2.)

On January 20, 2021, Mr. Gochev reported an insurance claim to First American under the Policy for the damaged property, and First American acknowledged receipt of the claim the same day. (Am. Gochev Decl. at ¶ 5; Monroe Decl. at ¶ 3.) At that time, First American explained to Mr. Gochev that his damaged vehicles would not be covered, and there would be limited or no coverage for the bus and storage container. (Am. Gochev Decl. at ¶ 6; *see also* Strzelec Decl. (dkt. # 25) at 13, ¶ 41.) Mr. Gochev represents First American requested him to maintain the damaged items on his premises so they could be inspected and preserved. (Am. Gochev Decl. at ¶ 6.) To that end, Mr. Gochev maintained a daily log of the cleanup of the debris from the property and maintenance of the damaged property, beginning cleanup on January 14, 2021, two days after the reported loss. (Second May Decl., Ex. 2 (dkt. # 30-2) at 1-9.)

Because it appeared to Mr. Gochev that First American was not immediately sending anyone to inspect the damaged property, in February 2021, Mr. Gochev retained Harber Appraisal (Mike Harber and Don Lathrop) as his public adjusters to handle the claim. (Am. Gochev Decl. at ¶ 7; *see also* Strzelec Decl. at 14, ¶ 41.) On February 7, 2021, Plaintiffs purchased a 40-foot shipping container for storage of the damaged property.[4] (Second May Decl., Ex. 4 (dkt. # 30-4) at 8.)

On February 12, 2021, Mr. Harber requested Mr. Gochev be allowed to remove the damaged bus and storage containers because it was interfering with work being carried out by Kaiser. (Am. Gochev Decl. at ¶¶ 8-9; *see also* Strzelec Decl. at 14, ¶ 41.) On February 19, 2021,

---

[4] Plaintiffs purchased four shipping containers between February 7, 2021, and March 4, 2021, to help store the property. (*See* Second May Decl., Exs. 4 at 8, 5 (dkt. # 30-5) at 1-3.) First American paid Mr. Gochev $2,000 for the first shipping container on February 23, 2021, despite it not being covered by the Policy. (*See id.*, Ex. 4 at 9.)

ORDER - 3

First American responded to Mr. Harber that the bus would be considered an "other structure," that it would be covered under the Policy, and indicated a First American contracted inventory company was available to catalog the damaged property. (Am. Gochev Decl. at ¶¶ 11-12; *see also* Strzelec Decl. at 15, ¶ 41.) On February 23-24, 2021, Mr. Lathrop and First American exchanged communications indicating that First American's inventory company "fell through," that First American requested Mr. Gochev or his adjusters complete the inventory process or through a company of his choosing, and that First American was amenable to Mr. Gochev scrapping the bus. (Am. Gochev Decl. at ¶ 13; *see also* Strzelec Decl. at 16, ¶ 41.)

However, between March 1, 2021, and March 5, 2021, Mr. Lathrop and First American exchanged several communications evincing that Mr. Lathrop was also having difficulties contracting an inventory company, that the inventory company he had located required additional information on how First American needed the damaged property inventoried to provide an estimate, and that Mr. Gochev estimated a "cleanup number" of $8,500-$10,000 for disposal of the bus. (Am. Gochev Decl. at ¶ 14; *see also* Strzelec Decl. at 17-19, ¶ 41.) Mr. Lathrop requested confirmation that First American would cover the inventory company and bus cleanup costs, to which First American responded it "would need invoice/estimate of some sort" because it would "have to have a record before [] commit[ting] to a large payment like that." (Am. Gochev Decl. at ¶ 14; *see also* Strzelec Decl. at 17, ¶ 41.) Mr. Lathrop responded with ballpark estimates for the inventory company and the bus cleanup, to which First American again responded it required documentation in writing from the companies sought to be used, and not just estimates. (Am. Gochev Decl. at ¶ 14; *see also* Strzelec Decl. at 18, ¶ 41.) On March 3, 2021, Mr. Lathrop provided invoices to First American. (Am. Gochev Decl. at ¶ 14; *see also* Strzelec Decl. at 18-19, ¶ 41.) First American responded on March 5, 2021, that management

ORDER - 4

approval would be needed for the loss request. (Am. Gochev Decl. at ¶ 14; *see also* Strzelec Decl. at 19, ¶ 41.)

On March 8, 2021, Mr. Lathrop informed First American that Mr. Gochev had purchased two additional storage containers to move the damaged items into, which Mr. Lathrop represented to First American was done to "reduce any further exposure to the elements." (Am. Gochev Decl. at ¶ 15; *see also* Strzelec Decl. at 20, ¶ 41.) On March 17, 2021, Mr. Lathrop contacted First American and expressed that the delay in coverage had interfered with Mr. Gochev's business because he had to purchase a replacement for one of the damaged items, a concrete saw, for a job that week. (Am. Gochev Decl. at ¶ 17; *see also* Strzelec Decl. at 20, ¶ 41; Second May Decl., Ex. 4 at 5.) That same day, First American sent another letter indicating its investigation was ongoing, that it needed further time to investigate, and requested additional information regarding whether the damaged items were for personal or business use and whether the damaged vehicles were used for storage or were Mr. Gochev's personal vehicles. (Am. Gochev Decl. at ¶ 18; Monroe Decl. at ¶ 8, Ex. 4 (dkt. # 22-4) at 1-2.)

On March 19, 2021, Mr. Lathrop represented to First American that all the property being claimed by Mr. Gochev was for his personal use, and not for Kaiser's use, and that the vehicles First American inquired about were not licensed or operable and were only being stored on the property. (Monroe Decl. at ¶ 8, Ex. 4 at 1-2.) First American responded it would work on processing the inventory of damaged items but noted that though the Policy covered vehicles that "served" the premises, such as the bus as a storage unit, it did not cover vehicles stored on the premises. (*Id.*, Ex. 4 at 1.) Sometime between March 26, 2021, and March 28, 2021, Plaintiffs completed their cleanup of the debris. (*See* Second May Decl., Exs. 1 at 7, 3 (dkt. # 30-3) at 4.)

ORDER - 5

On March 30, 2021, First American issued a reservation of rights letter to Mr. Gochev. (Monroe Decl. at ¶ 7, Ex. 3 (dkt. # 22-3); Am. Gochev Decl. at ¶ 19.) On April 12, 2021, First American requested Mr. Gochev undertake an examination under oath to complete its investigation based on inconsistencies as to whether the damaged property was for personal or business use. (*See* Monroe Decl. at ¶¶ 6, 8, Exs. 2 (dkt. # 22-2), 4; Am. Gochev Decl. at ¶¶ 13, 21; *see also* First May Decl., Ex. 1 (Gochev Examination Under Oath ("EUO") (dkt. # 21-1).) On April 15, 2021, First American discovered Mr. Gochev had filed two commercial auto claims for vehicles "damaged in a natural event" with the same date of loss and location as Mr. Gochev's residence. (First May Decl., Ex. 2 (dkt. # 21-2) at 21; *see also* Strzelec Decl. at 24, ¶ 41.)

Mr. Gochev's examination was initially scheduled for May 12, 2021, but following several postponements, took place on August 18, 2021.[5] (First May Decl., Ex. 1; Am. Gochev Decl. at ¶ 24.) Mr. Gochev provided a complete property inventory to First American along with a summary of invoices and costs for labor, cleanup, and storage of the property prior to his examination. (First May Decl., Ex. 3 (dkt. # 21-3).) At his examination, Mr. Gochev testified he stored property used for Kaiser at his residence including "all of the stuff that the trees destroyed," which he testified as being "the bus, the box truck, the containers that got damaged, all of the tools." (First May Decl., Ex. 1 (Gochev EUO at 21:7-12, 22:2-10).) Mr. Gochev additionally testified "some" of the damaged property was used for Kaiser. (*Id.* at 22:11-17.)

---

[5] The postponements of Mr. Gochev's examination appear to have occurred due to initial scheduling difficulties with First American's examination counsel and Mr. Gochev's counsel and later due to hearing and trial conflicts with both counsel in Summer 2021. (First May Decl., Ex. 2 at 22-24; Strzelec Decl. at 25-27, ¶ 41.)

ORDER - 6

On September 30, 2021, First American completed its investigation and issued its coverage determination. (Monroe Decl. at ¶ 10, Ex. 6 (dkt. # 22-6); Am. Gochev Decl. at ¶ 25.) First American paid Mr. Gochev a total of $22,581.99 on his claim.[6] (Monroe Decl., Ex. 6 at 1-3.) As part of its claim payment, First American paid the Policy limit for "Personal Property at Other Residences" (10% of the limit of liability for personal property under the Policy's declarations) in the amount of $19,125.70, the Policy limit for "debris removal" (5% of the total available limit of $19,125.70) in the amount of $956.29, and the Policy limit for "Business Property" in the amount of $500.00. (*Id.*) First American's coverage determination provided no coverage was extended to any of the claimed vehicles because they were not covered property under the Policy. (*Id.* at 3.) First American's final claim payment was issued to Mr. Gochev on October 4, 2021. (Monroe Decl. at ¶ 10.)

On December 7, 2021, Plaintiffs' counsel issued a Washington IFCA notice of claim to First American alleging First American unreasonably delayed claim payment. (Monroe Decl. at ¶ 9, Ex. 5 (dkt. # 22-5); Brooks Decl. (dkt. # 24) at ¶ 3.)

On January 10, 2022, Plaintiffs' Complaint was served on First American. (*See* Compl. (dkt. # 1-2).) First American removed the matter to this Court on February 9, 2022. (Notice of Removal (dkt. # 1).) First American filed its Answer and Affirmative Defenses on February 16, 2022. (Answer (dkt. # 5).) After two stipulated extensions of time on the case schedule and trial date (dkt. ## 14, 17), Defendants filed the instant Motion on August 14, 2023. (*See* Defs.' Mot.)

---

[6] First American made an "accidental" $2,000 payment for a storage container due to its belief the covered loss occurred at Mr. Gochev's insured residence. (Def.'s Mot. at 7; Second May Decl., Ex. 4 at 8.) First American has not requested refund of the $2,000 payment. (*Id.*)

ORDER - 7

### B. Plaintiffs' Expert Stephen L. Strzelec

Mr. Gochev retained insurance claims practice expert Stephen L. Strzelec for his claims in this action. (*See* First May Decl., Ex. 2; Strzelec Decl.) Mr. Strzelec has worked as an insurance claims practice expert since 2002, previously worked in various claims handling roles for State Farm from 1985 to 2002, and has provided expert testimony in several federal and state cases across the country. (Strzelec Decl. at 1, 3, ¶¶ 1, 13; First May Decl., Ex. 2 at 35-39.)

Mr. Strzelec opines First American failed to meet minimum industry standards for claims handling in this case, including "the obligation of giving at least equal consideration to the insured's interests, [which] is reflected in the investigation into the property loss and the failure to timely pay all amounts owed under the policy." (Strzelec Decl. at 30, ¶ 42.) Mr. Strzelec opines a "simple analysis" of the policy and coverages in January 2021 would have put First American on notice the total amount available for the reported loss was approximately $22,000, and that there is no documented reason for the delay in paying the claim.[7] (*Id.* at 31, ¶¶ 44-45.) Mr. Strzelec concludes had First American conducted an appropriate investigation, inspected the loss, met with Mr. Gochev, or disclosed its reasons for seeking an examination under oath, Mr. Gochev's claim would have been more timely resolved, instead of taking approximately eight months to adjust. (*Id.* at 36, ¶ 68.)

### III.   DISCUSSION

First American argues dismissal of all of Plaintiffs' claims is appropriate because: (1) the Policy does not cover Mr. Gochev's residence; (2) First American does not insure Kaiser or its

---

[7] Per Mr. Strzelec's analysis, the available coverage to Mr. Gochev was the sum of: "(1) Coverage C (off premises) 10% of Limit [:] $19,125.70; (2) Debris Removal 5% of Coverage C Limit (overlimit addition) [:] $956.29; (3) Trailers not used with watercraft [:] $ 1,500.00; and (4) Business Personal Property off Premises 10% of Limit [:] $500.00." (Strzelec Decl. at 31, ¶ 44.)

ORDER - 8

business property; (3) the Policy does not insure vehicles belonging to Plaintiffs; and (4) Plaintiffs do not allege First American wrongfully denied coverage or underpaid policy benefits, but instead, seek extracontractual damages for the loss of use of storage sheds, lost business income, damage to Mr. Gochev's credit, and for emotional distress. (Def.'s Mot. at 1-2.) First American further argues that neither Plaintiffs nor their expert Mr. Strzelec dispute that First American paid what it owed under the Policy. (*Id.* at 7-8.)

Plaintiffs respond First American failed to promptly adjust Plaintiffs' loss and unreasonably delayed payment. (*See* Pls.' Resp. at 9-19.) Plaintiffs generally argue First American failed to send anyone to look at the damaged property for several months, and that had First American promptly investigated Mr. Gochev's claim, Mr. Gochev could have avoided the costs of storing and maintaining the damaged property on his premises and the resulting interference to his business. (*See id.* at 14.; *see also* Am. Gochev Decl. at ¶¶ 29-37.)

A.  **Summary Judgment Standard**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*

*Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B.     Plaintiffs' Claims

#### i.     Breach of Contract

First American initially argues it did not breach its contract with Mr. Gochev because it paid what it owed under the Policy. (Def.'s Mot. at 9-10.) Plaintiffs respond First American's actions were not reasonable, and therefore, it breached duties owed under the insurance contract. (*See* Pls.' Resp. at 10-11.)

In Washington, an insurance policy is construed as a contract and given "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 181 (Wash. 2017), *as*

*modified* (Aug. 16, 2017) (quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627 (Wash. 1994) (citations and internal quotations omitted)). To establish breach of contract, Plaintiffs must demonstrate: (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. *See Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35 (Wash. 2014).

Relevant to this claim, in an insurance breach of contract action, an insured may only recover damages up to the policy limits. *Polygon N.W. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 775 (Wash. Ct. App. 2008) ("Washington law does not, in fact, force insurers to pay for losses that they have not contracted to insure."). Where an insurer is found liable for a breach of the insurance contract, the maximum liability for damages is therefore limited to the policy limits. *Kabrich v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 3925493, at *7-8 (E.D. Wash. Aug. 12, 2014), *aff'd*, 693 F. App'x 524 (9th Cir. 2017); *Woo v. Fireman's Fund Ins. Co.*, 150 Wn. App. 158, 164 (Wash. Ct. App. 2009) ("The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached.").

On this claim, Plaintiff does not contend First American failed to pay what was owed under the Policy. First American paid Mr. Gochev a total of $22,581.99 on his claim, comprising $19,125.70 for personal property at other residences, $956.29 for debris removal, $500.00 for business property, and $2,000.00 for a storage container. (*See* Monroe Decl., Ex. 6 at 1-3; Second May Decl., Ex. 4 at 8.) Plaintiffs and their expert Mr. Strzelec do not dispute Plaintiffs received the amount owed under the Policy. (*See* Pls.' Resp. at 9-10; Strzelec Decl. at 31, ¶ 44 (finding total amount available for reported loss was approximately $22,0000).) Consequently, because the Policy limits for Mr. Gochev's insurance claim have been paid by First American,

Plaintiffs' claim for breach of contract must be dismissed. *See Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1306 (W.D. Wash. 2013) (granting insurer's partial summary judgment on breach of contract claim, concluding "[i]f Allstate is liable for breach of contract, its damages for that breach are limited to [unpaid portion of the policies].").

Plaintiffs' extracontractual claims addressing whether First American failed to act reasonably, and in good faith, in the investigation and adjustment of Plaintiffs' claim are considered below.[8]

### ii.   Bad Faith

First American next argues Plaintiffs cannot establish a claim for common law bad faith. (Def.'s Mot. at 11-13.) First American contends Plaintiffs failed to demonstrate any breach of the insurance agreement was unreasonable, or that such breach proximately caused Plaintiffs' damages, and First American had a reasonable basis for its claim decision due to its doubts that damaged items claimed by Mr. Gochev as personal property were instead business property used by Kaiser. (*Id.*) Plaintiffs respond bad faith exists in this case because First American unreasonably delayed payment and demanded Mr. Gochev store the damaged items for a prolonged period at Plaintiffs' expense, which lead to Plaintiffs' damages. (*See* Pls.' Resp. at 14-16.)

"Claims of insurer bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 (Wash. 2008) (citations and internal

---

[8] *See Eastside Physical Therapy, Inc., P.S. v. United Servs. Auto. Ass'n*, 10 Wn. App. 2d 1031 (Wash. Ct. App. 2019) (citing cases and finding nothing "preclude[s] an insured from suing an insurer for CPA damages just because the insurer has paid out policy limits."); *Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1499265, at *10 (W.D. Wash. Apr. 11, 2013) ("Washington courts have repeatedly permitted bad faith actions to proceed absent a successful contract claim." (collecting cases)).

quotations omitted). An insurer has a duty of good faith to its policyholder, *Sagdai v. Travelers Home & Marine Ins. Co.*, 639 F. Supp. 3d 1091, 1108 (W.D. Wash. 2022), and it owes a heightened duty to "give equal consideration to the insured's interests and its own interests." *Liberty Int'l Underwriters v. Carlson*, 2006 WL 623785, at *9 (W.D. Wash. Mar. 13, 2006) (citing *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470 (Wash. 2003)).

Washington courts have regularly noted the test for bad faith "is not whether the insurer's interpretation [of the policy] is correct, but whether the insurer's conduct was reasonable." *Wright v. Safeco Ins. Co.*, 124 Wn. App. 263, 279-80 (Wash. Ct. App. 2004); *see also Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329-30 (Wash. Ct. App. 2000) ("The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case."). Thus, "to succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (Wash. 2003) (en banc). Consequently,

> [A]n insurer is entitled to . . . dismissal on summary judgment of a policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party.

*Id.* Whether the insurer acted reasonably is a question of fact. *Id.*; *see also Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 16 F. Supp. 3d 1224, 1235 (E.D. Wash. 2014) ("Bad faith claims generally raise fact issues preventing a determination on summary judgment.").

Based on the record before the Court, disputed material facts exist pertaining to the reasonableness of First American's conduct under the circumstances presented in this case. In sum, First American contacted Mr. Gochev shortly his claim was reported and provided him with an inventory form to list the damaged property for his claim. (*See* Monroe Decl. at ¶ 3; *see also*

ORDER - 13

Strzelec Dec. at 13-14, ¶ 41.) After a prolonged back and forth between the parties throughout February 2021 as to who would conduct an inventory of the damaged property (*see* Am. Gochev Decl. at ¶¶ 7-14; Strzelec Dec. at 13-19, ¶ 41), Mr. Gochev provided a list of the damaged items with invoices for the cleanup services on March 3, 2021. (*See* Am. Gochev Decl. at ¶ 14; Strzelec Decl. at 19, ¶ 41.) Per First American, Mr. Gochev's list contained several claims for items appearing to be for use in Mr. Gochev's excavation business, in addition to vehicles that appeared to be for Mr. Gochev's personal use.[9] (*See* Strzelec Decl. at 20, ¶ 41.) Nevertheless, on March 19, 2021, Plaintiffs' adjuster Mr. Lathrop confirmed to First American such items were for Mr. Gochev's personal use. (*See* Monroe Decl. at ¶ 8, Ex. 4 at 1-2.)

      Because of First American's doubts regarding the nature of the property claimed by Mr. Gochev, First American exercised its right under the Policy to conduct Mr. Gochev's examination under oath (*see* Monroe Decl., Ex. 1 at 19-20), eventually conducting the examination on August 10, 2021. (*See* First May Decl., Ex. 1; Am. Gochev Decl. at ¶ 24.) At his examination, Mr. Gochev testified some of the claimed items were used for Kaiser. (*See* First May Decl., Ex. 1 (Gochev EUO at 21:7-12, 22:2-17).) First American additionally discovered Plaintiffs made claims under commercial auto insurance policies for the claimed vehicles. (*See id.*, Ex. 2 at 21; *see also* Strzelec Decl. at 24, ¶ 41.) Mr. Gochev's insurance claim was paid by First American on October 4, 2021, a little over a month after Mr. Gochev's examination. (*See* Monroe Decl. at ¶ 10.)

---

[9] First American submits these items included: (1) three 55-gallon drums of diesel engine oil; (2) road work and other flagger signs; (3) tracked dump truck; (4) a Ram 5500 truck exhaust system; (5) a BMW 740i 40-foot LPG city bus (6) a box truck; (7) a fuel truck; (8) a diesel engine; (9) a dump truck muffler; and (10) a mobile welder/generator/compressor. (Def.'s Mot. at 12.) However, First American failed to cite to any record evidence of this specific itemization.

Mr. Gochev alleges First American failed to explain to him his coverage was limited to $20,581.99, and that due to his need to hold the damaged property for their investigation, such storage interfered with Mr. Gochev's business, Kaiser. (Am. Gochev Decl. at ¶ 29.) Mr. Gochev *inter alia* alleges damages due to emotional trauma from being unable to clean up his property because of First American's investigation, incurred expenses from requiring Kaiser employees to move damaged items at his property regularly because he could not dispose of them, and incurred costs for having to store the property for the duration of First American's investigation.[10] (*Id.* at ¶¶ 30-37; *see also* Second May Decl., Ex. 2 at 1-9.)

Here, the Court cannot resolve Plaintiffs' bad faith claim on summary judgment. The parties have presented competing evidence as to whether First American acted reasonably based on the eight months it approximately took to resolve Plaintiffs' insurance coverage claim. To rule in First American's favor would require the Court to ignore Mr. Gochev's declaration and Mr. Strzelec's opinions that First American's delay was unreasonable, and Plaintiffs' alleged economic and emotional harms resulting because of the delay.[11] *See Smith*, 150 Wn. 2d at 484. The Court therefore denies First' American's Motion on Plaintiffs' bad faith claim.

---

[10] First American responds that Mr. Gochev's allegations are contradicted by the record given Plaintiffs acquired four storage containers for the damaged items by March 4, 2021, and because Mr. Gochev represented the debris removal and cleanup was complete by March 26, 2021. (Def.'s Reply at 7-9.)

[11] The damages available in a breach of insurance contract claim and a bad faith claim "do not overlap." *Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, 2012 WL 6677766, at *8 (W.D. Wash. Dec. 21, 2012). A breach of insurance contract claim targets unpaid policy benefits. *Id.* In contrast, an insurer liable for bad faith "is not liable for the policy benefits but, instead, liable for the consequential damages to the insured as a result of the insurer's breach of its contractual [duty of good faith] and statutory obligations." *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 284 (Wash. 1998).

### iii.   Washington Consumer Protection Act

First American argues Plaintiffs' CPA claim fails because Plaintiff cannot show any unfair or deceptive act by First American, nor any injury or damage to business or property proximately caused by an alleged action or inaction by First American. (Def.'s Mot. at 14-16.) Plaintiffs counter they have presented substantial evidence First American unreasonably delayed its investigation, that Plaintiffs were injured by such delay, and that Plaintiffs' allegations of common law bad faith and WAC violations give rise to a per se CPA claim. (Pls.' Mot. at 17-18.)

The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. Washington courts have derived a five-part test for private actions brought under the CPA. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (Wash. 1986). Under the *Hangman Ridge* test, plaintiffs must demonstrate (1) an unfair or deceptive practice or act; (2) in commerce or trade; (3) that affects the public interest; (4) injury to the plaintiff's business or property; and (5) a causal link between the unfair or deceptive practice or act and the injury suffered. *Id.* at 784-85.

An insurer's bad faith or violation of an insurance regulation satisfies the first three elements of a CPA claim. *Naxos, LLC v. Am. Fam. Ins. Co.*, 2020 WL 777260, at *22 (W.D. Wash. Feb. 18, 2020); *Cochrane v. Am. Guar. & Liab. Ins. Co.*, 471 F. Supp. 3d 1140, 1154 (W.D. Wash. 2020) ("[A]n insurer's 'bad faith constitutes a per se violation of the CPA.'" (quoting *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 12 (Wash. Ct. App. 2009)). A failure to establish all five elements of the *Hangman Ridge* test requires

ORDER - 16

dismissal of a CPA claim. *See e.g.*, *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553 (Wash. Ct. App. 1992).

On this claim, Plaintiffs allege First American violated its duty of good faith and applicable insurance industry standards and WAC regulations.[12] (*See* Compl. at ¶¶ 5.1-5.3, 7.1-7.4) Such allegations, if found true at trial, satisfy the first three parts of a CPA claim. *See e.g.*, *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 984 (W.D. Wash. 2020) (holding "[a] single violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010," which "is a per se unfair trade practice and satisfies the first element of the 5-part test for bringing a CPA action"); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394 (Wash. 1986) ("It is also established that breach of an insurer's duty of good faith constitutes a per se CPA violation."). As considered above with respect to Plaintiffs' bad faith claim, Plaintiffs have set forth sufficient evidence that genuine issues of material facts exist as to Plaintiffs' injuries for the fourth element, and that a causal link exists between First American's alleged unreasonable delay and Plaintiffs' injuries for the fifth element. (*See* Am. Gochev Decl. at ¶¶ 29-37.) Therefore, viewing the facts in the light most favorable to Plaintiffs, this Court cannot conclude First American is entitled to summary judgment on Plaintiffs' CPA claim.

    v.  *Washington Insurance Fair Conduct Act*

Finally, First American argues Plaintiffs' IFCA claims should be dismissed because Plaintiffs fail to allege a wrongful denial or underpayment of benefits and because Plaintiffs' IFCA notice was ineffective. (Def.'s Mot. at 13-14.) Plaintiffs argue their IFCA claim should not

---

[12] Plaintiffs specifically note First American's conduct gives rise to violations of: (1) WAC 284-30-330 (specific unfair claims settlement practices defined); (2) WAC 284-30-350 (misrepresentation of policy provisions); (3) WAC 284-30-360 (failure to acknowledge pertinent communications); WAC 284-30-370, (standards for prompt investigation of claims); and (5) WAC 284-30-380 (standards for prompt, fair and equitable settlements applicable to all insurers). (Pls.' Mot. at 17.)

ORDER - 17

be dismissed as First American failed to respond within the twenty-day period after its receipt of the IFCA notice, or otherwise failed to resolve the basis for Plaintiffs' IFCA action—First American's unreasonable delay of payment on Mr. Gochev's claim and its resulting harms to Plaintiffs. (Pls.' Resp. at 11-12, 16; *see* Compl. at ¶¶ 8.1-8.9.)

The IFCA provides a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs[.]" RCW 48.30.015(1). The IFCA requires a first-party claimant to "provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner" twenty days prior to filing an IFCA action. RCW 48.30.015(8)(a). If the insurer fails to resolve the basis of the action, the claimant may bring their action without further notice. RCW 48.30.015(8)(b).

Nevertheless, the "IFCA does not create an independent cause of action for regulatory violations." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 681 (Wash. 2017). Therefore, to bring a claim under the statute, the insured must establish their insurer has unreasonably denied: (1) a claim for coverage or (2) payment of benefits. *Id.*; *see also Dentists Ins. Co. v. Yousefian*, 2023 WL 4106220, at *17 (W.D. Wash. June 21, 2023).

On December 7, 2021, Plaintiffs' counsel issued an IFCA notice to First American alleging First American delayed claim payment. (Monroe Decl., Ex. 5; Brooks Decl. at ¶ 3.) Specifically, the issued IFCA notice provides:

> Mr. Gochev and Kaiser Enterprises reported a loss to First American earlier this year. Shortly after the claim was reported, First American started causing delay, and refused to clarify what was covered and what was not covered. Then, First American demanded Mr. Gochev undergo an unnecessary examination under oath, and only after that did they state what amount was covered and offered what was clearly from the beginning a covered loss.

ORDER - 18

[. . .]

> It is clear from the fact of this case that [First American's] handling of this claim has led to damages that should never have occurred had this file been properly handled from the start. From the beginning, you have delayed the investigation of the claim, failed to promptly act, and failed to communicate with your insured.
>
> You also delayed payment unnecessarily by not promptly adjusting and paying what was owed to your insured. Additionally, you have put your own interest ahead of the interest of your insured.

(Monroe Decl., Ex. 5 at 1-2.)

Plaintiffs' IFCA notice clearly outlines the basis for Plaintiffs' complaints with First American's delay in investigating and adjusting Mr. Gochev's insurance claim. (*See* Monroe Decl., Ex. 5.) This Court has recognized, in the IFCA context, that "a refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary." *Taladay v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2016 WL 3681469, at *2 (W.D. Wash. July 6, 2016) (citing *Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co.*, 2015 WL 3473465, *6 (W.D. Wash. June 2, 2015)). As considered above, the record contains facts which, when viewed in the light most favorable to Plaintiffs, would allow a jury to conclude First American acted unreasonably in handling Mr. Gochev's insurance claim distinct from Plaintiffs' alleged insurance regulatory violations and despite First American ultimately paying the Policy's limits. Such facts must also be resolved at trial for adjudication of Plaintiffs' IFCA claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

(1)   First American's Motion (dkt. # 20) is GRANTED in part and DENIED in part. First American's Motion is granted as to Plaintiffs' breach of insurance contract claim, but denied as to the remainder of Plaintiffs' claims;

(2)   The Clerk is directed to send a copy of this Order to the parties.

Dated this 27th day of September, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 20