1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HRISTO GOCHEV, *et al.*,

                        Plaintiffs,

        v.

FIRST AMERICAN PROPERTY AND
CASUALTY INSURANCE CO.,

                        Defendant.

Case No. C22-159-MLP

ORDER

## I.      INTRODUCTION

This matter is before the Court on: (1) Plaintiff Hristo "Chris" Gochev's ("Plaintiff")

"Motion Regarding Attorney Fees and Costs and for Enhanced Damages under the Insurance

Fair Conduct Act" ("IFCA") ("Plaintiff's Fees Motion") (Pl.'s Fees Mot. (dkt. # 82)); (2)

Plaintiff's "Motion to Modify Judgment" (Pl.'s Mot. (dkt. # 86)); and (3) Defendant First

American Property & Casualty Insurance Company's ("First American") "Rule 50(b) Motion for

Judgment as a Matter of Law" ("First American's Motion") (Def.'s Mot. (dkt. # 88)).[1]

---

[1] First American notes its motion is brought pursuant to Fed R. Civ. P. 50(b) and Fed. R. Civ. P. 59(a).
(*See* Def.'s Mot. at 1.) But it is unclear whether First American seeks a new trial as it did not provide any
argument pursuant to Rule 59(a) (*see id.*) and confusingly submits later in its motion that it is brought
pursuant to Rule 50(b) and Fed. R. Civ. P. 59(e). (*See id.* at 3.) First American only provided legal

1    Having considered the parties' submissions, the balance of the record, and the governing

2  law: (1) Plaintiff's Fees Motion (dkt. # 82) is GRANTED in part and DENIED in part; (2)

3  Plaintiff's Motion to Modify Judgment (dkt. # 86) is GRANTED in part and DENIED in part;

4  and (3) First American's Motion (dkt. # 88) is DENIED, as further explained below.

## II.    BACKGROUND

6    The Court conducted a jury trial in this matter on Plaintiff's claims against First

7  American for insurer bad faith, violation of the Washington Consumer Protection Act ("CPA"),

8  and violation of IFCA. (*See* dkt. ## 58, 65, 70.) The Court has previously detailed the

9  background of this case in its previous Order on summary judgment. (*See* dkt. # 34 at 2-8.)

10    Relevant to the parties' motions, on December 7, 2021, Plaintiff's counsel issued an

11  IFCA notice of claim to First American alleging First American unreasonably delayed claim

12  payment. (Monroe Decl., Ex. 5 (dkt. # 22-5); First Brooks Decl. (dkt. # 24) at ¶ 3.) The issued

13  IFCA notice provides in part that:

> Mr. Gochev and Kaiser Enterprises reported a loss to First American earlier this year. Shortly after the claim was reported, First American started causing delay, and refused to clarify what was covered and what was not covered. Then, First American demanded Mr. Gochev undergo an unnecessary examination under oath, and only after that did they state what amount was covered and offered what was clearly from the beginning a covered loss.

> . . .

> It is clear from the fact of this case that [First American's] handling of this claim has led to damages that should never have occurred had this file been properly handled from the start. From the beginning, you have delayed the investigation of the claim, failed to promptly act, and failed to communicate with your insured.

> You also delayed payment unnecessarily by not promptly adjusting and paying what was owed to your insured. Additionally, you have put your own interest ahead of the interest of your insured.

---

standards pursuant to Rule 59(e) to alter or amend the judgment entered in this case. (*See id.* at 2-3.) Nonetheless, to the extent First American's Motion can be construed to request a new trial, that request is denied for reasons explained below.

1    (Monroe Decl., Ex. 5 at 1-2.)

2         On August 14, 2023, on summary judgment, First American argued that Plaintiff's IFCA

3    claim should be dismissed because: (1) Plaintiff failed to allege a wrongful denial or

4    underpayment of benefits as required for an IFCA claim; and (2) Plaintiffs' IFCA notice was

5    ineffective. (Def.'s Summ. J. Mot. (dkt. # 20) at 13-14.) Specifically, First American argued that

6    Plaintiff's IFCA claim failed as a matter of law because IFCA does not create an independent

7    cause of action solely for violations of the Washington Administrative Code. (*Id.* at 13 (citing

8    *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 680 (Wash. 2017).) First

9    American additionally argued that Plaintiff's 20-day IFCA notice was ineffective because it

10   failed to set forth what First American could do to avoid suit or fix the alleged wrongful denial or

11   underpayment of benefits. (*Id.* at 13-14.)

12        On September 27, 2023, this Court denied First American's challenge to the IFCA claim

13   on summary judgment. (Dkt. # 34 at 17-19.) The Court noted that Plaintiff's IFCA notice clearly

14   outlined the basis for Plaintiff's complaints with First American's delay in investigating and

15   adjusting his insurance claim in his written notice, as required by RCW 48.30.015(8), prior to

16   filing an IFCA action.[2] (*Id.* at 19.) In addition—based on authority provided by Plaintiff (*see* dkt.

17   # 23 at 9-11) and left unrebutted by First American (*see* dkt. # 29 at 3-4)—the Court found that

18   this District has recognized that "a refusal to pay a demand for coverage reasonably promptly is

19   an unreasonable denial of benefits, even if only temporary" for IFCA claims. (Dkt. # 34 at 19

20   (quoting *Taladay v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2016 WL 3681469, at *2 (W.D. Wash.

21

22   _____

23   [2] The IFCA notice requirement only requires a first-party claimant to "provide written notice of the basis
     for the cause of action to the insurer and office of the insurance commissioner" twenty days prior to filing
     an IFCA action. RCW 48.30.015(8)(a). If the insurer fails to resolve the basis of the action, the claimant
     may bring their action without further notice. RCW 48.30.015(8)(b).

July 6, 2016)).) The Court therefore concluded that a genuine issue of material existed as to whether First American acted unreasonably in handling Plaintiff's claim for the alleged IFCA claim, distinct from Plaintiff's alleged insurance regulatory violations. (*Id.*)

On October 11, 2023, the parties submitted agreed and disputed jury instructions prior to trial. (Dkt. # 50.) As part of the agreed submitted instructions, the parties provided instructions on "Violation of [IFCA]" and "Unreasonable Delay in Payment." (*See id.* at 3.) The "Violation of [IFCA]" instruction provided the elements for the jury to find a violation of IFCA pursuant to a modified version of Washington Pattern Civil Jury Instruction 320.06.01.[3] (*Id.* at 26.) The "Unreasonable Delay in Payment" instruction instructed that an unreasonable delay in payment can constitute an unreasonable denial of benefits based on *Taladay* and other authority from this District. (*Id.* at 3, 29-30.)

On October 16, 2023, the first day of trial, Plaintiff testified as to damages he incurred based on the storage costs of property he was asked by First American to maintain for its examination. (*See* Day 1 Trial Tr. (dkt. # 103) at 157:7-159:1.) As to storage costs, Plaintiff testified:

---

[3] The parties' IFCA instruction specifically provides:

> Gochev and Kaiser Trucking claim that First American violated the [IFCA]. To prove that claim, Gochev & Kaiser Trucking, LLC has [sic] the burden of proving each of the following propositions:
>
> 1. First American Property and Casualty unreasonably denied a claim for coverage or payment of benefits,
>
> 2. Gochev & Kaiser Trucking, LLC was [sic] damaged, and
>
> 3. First American Property and Casualty's acts or practices were a proximate cause of Gochev & Kaiser Trucking, LLC's damage.

(Dkt. # 50 at 26.)

ORDER - 4

| Q: | Do you know -- well, about how much space -- well, what would be the value -- are you familiar with the value of storage spaces in Snohomish County? |
|---|---|
| A: | 8-by-20, 400 bucks a month, for a storage unit, I think. |
| Q: | And if you had to rent storage space to store all these items, how much would it cost you in Snohomish County? |
| A: | Well, everything was in roughly three containers. So it would be three storage units. |

(Day 1 Trial Tr. at 157:7-14.) During this portion of Plaintiff's testimony, First American objected to Plaintiff's counsel providing leading questions, but did not object on any other basis as to Plaintiff's testimony. (*See id.* at 157:7-159:1.)

At the close of Plaintiff's case on the second day of trial, First American made several motions pursuant to Federal Rule of Civil Procedure 50(a). First, First American moved for a directed verdict as to all claims brought against it by Kaiser Enterprises, which the Court granted as stipulated by the parties. (*See* Day 2 Trial Tr. (dkt. # 104) at 364:10-365:3.)

Second, First American moved for a directed verdict as to Plaintiff's IFCA claim on the basis that Plaintiff failed to present evidence of damages. (*See* Day 2 Trial Tr. at 365:4-8.) The Court reserved its ruling, and the IFCA claim was ultimately submitted to jury.[4] (*Id.* at 366:13-15.)

Third, First American moved for a directed verdict based on Plaintiff's alleged failure to file a 20-day notice of intent to file suit pursuant to IFCA. (*See* Day 2 Trial Tr. at 365:16-20.) The Court denied First American's motion given Plaintiff's citation to the mailed notice being

---

[4] *See* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law . . . the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

ORDER - 5

1    admitted into evidence. (*Id.* at 365:21-368:4; *see also* Tr. Ex. List (dkt. # 72) at 1

2    ("Communications by Defendant").)

3        Fourth, First American moved for a directed verdict on the basis that the 20-day notice of

4    intent to file suit pursuant to IFCA was insufficient because Plaintiff failed to identify any

5    wrongful denial or underpayment of benefits that could have been cured by First American in the

6    notice. (*See* Day 2 Trial Tr. at 368:5-369:6.) The Court reserved its ruling, and the claim was

7    submitted to the jury. (*Id.* at 369:7-8.)

8        Finally, First American moved for a directed verdict on Plaintiff's CPA claim, arguing

9    that Plaintiff failed to demonstrate an unfair or deceptive act that proximately caused Plaintiff's

10    storage costs. (*See* Day 2 Trial Tr. at 369:13-370:8.) The Court reserved its ruling on the motion,

11    and the claim was submitted to jury. (*Id.* at 372:12-13.)

12        On October 18, 2023, the last day of trial, the Court conducted a jury instruction settling

13    conference. (Day 3 Trial Tr. (dkt. # 105) at 375:20-382:4.) Neither party raised issues with the

14    IFCA instruction nor its treatment on the verdict form at that conference. (*See id.*) As a result, the

15    parties' agreed instruction on the IFCA claim was provided as Jury Instruction No. 12:

16    "Violation of the IFCA—Burden of Proof" and the parties' instruction on unreasonable delay

17    was provided as Jury Instruction No. 14: "Unreasonable Delay in Payment." (*Compare* dkt. # 50

18    at 26, 29 *with* dkt. # 71 at 14, 16.)

19        During the jury's deliberations, the jury returned a question about Plaintiff's IFCA claim

20    and whether an unreasonable delay in payment satisfied the verdict form question for the IFCA

21    claim.[5] (Dkt. # 74.) Specifically, the jury asked whether the first proposition to be proved in Jury

22    Instruction No. 12 for the IFCA claim—that First American unreasonably denied a claim for

23

---

[5] Question No. 3 on the verdict form asked: "Did First American violate the [IFCA] by unreasonably denying, or in unreasonably delaying, the payment of Mr. Gochev's insurance claim?" (Dkt. # 75 at 2.)

coverage or payment of benefits—should also state "delaying" as indicated by the verdict form. (*Id.* at 2.) After consulting with the parties and receiving no objection (*see* Day 3 Trial Tr. at 474:20-475:5), the Court submitted an answer back to the jury that the parties agreed Jury Instruction No. 12 for the IFCA claim should include "or unreasonably delayed payment" as provided by Jury Instruction No. 14. (Dkt. # 74 at 3.)

The jury returned a verdict in Plaintiff's favor on Plaintiff's insurer bad faith and IFCA claims, and in favor of First American on Plaintiff's CPA claim. (*See* dkt. # 75.) The jury awarded Plaintiff a total of $9,600 in damages in past economic damages due to Plaintiff's storage costs, but found Plaintiff 40% at fault for his damages, reducing his award to $5,760. (*Id.* at 3.)

Following the jury's verdict, on November 3, 2023, and on November 9, 2023, Plaintiff timely filed his motions for attorney's fees and costs, enhanced damages, and to modify the judgment. (*See* Pl.'s Fee Mot.; Pl.'s Mot.). On November 20, 2023, First American timely filed its renewed motion for judgment as a matter of law under Rule 50(b). (*See* Def.'s Mot.) The Court heard oral argument from the parties on January 11, 2024. (*See* dkt. # 107.) This matter is now ripe for the Court's review.

### III.    DISCUSSION

#### A.    Rule 50(b) Motion

##### i.    *Legal Standards*

Judgment as a matter of law is warranted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law under Rule 50(a) must be brought before the matter is submitted to

the jury. Fed. R. Civ. P. 50(a)(2). If it is denied, it may be renewed, and "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

In reviewing a motion for judgment as a matter of law, the court does not weigh evidence or make credibility determinations. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Instead, the court views the evidence in the light most favorable to the nonmoving party, taking all reasonable inferences in that party's favor. *Id.* The court must uphold the jury's verdict if there was substantial evidence to sustain it. *Id.* "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987). Judgment as a matter of law may be granted only when the evidence, as appropriately viewed, permits only one reasonable conclusion and such conclusion runs contrary to the jury's verdict. *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

Because a Rule 50(b) motion is a renewed motion, a proper post-verdict motion for judgment as a matter of law is limited to the grounds asserted in the movant's pre-verdict Rule 50(a) motion. *E.E.O.C.*, 581 F.3d at 961-62 (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)). Consequently, a party cannot "raise arguments in its post-trial motion or judgment as a matter of law under Rule 50(b) that it did not raise in its pre[-]verdict Rule 50(a) motion."[6] *Freund*, 347 F.3d at 761; *see also Williams v. Gaye*, 895 F.3d 1106, 1131 (9th Cir. 2018); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses

---

[6] "However, Rule 50(b) 'may be satisfied by an ambiguous or inartfully made motion' under Rule 50(a)." *E.E.O.C.*, 581 F.3d at 961 (quoting *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989)). "Absent such a liberal interpretation, the rule is a harsh one." *Id.*

1    the possibility of considering a Rule 50(b) motion."). Where the moving party fails to file a

2    procedurally sound Rule 50(b) motion, the Court is limited to reviewing the jury's verdict for

3    plain error and should reverse only if such plain error would result in a "manifest miscarriage of

4    justice." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002) (quoting *United*

5    *States v. 33.5 Acres of Land*, 789 F.2d 1396, 1400 (9th Cir. 1986)).

6            Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend

7    its judgment within twenty-eight days after entry of the judgment. "Since specific grounds for a

8    motion to amend or alter are not listed in the rule, the [court] enjoys considerable discretion in

9    granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)

10   (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999)). There are four

11   grounds upon which a Rule 59(e) motion may be granted: (1) if it is necessary to correct

12   manifest errors of law or fact upon which the judgment rests; (2) if it is necessary to present

13   newly discovered or previously unavailable evidence; (3) if it is necessary to prevent manifest

14   injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id.*

15   Nonetheless, amending a judgment after its entry is "an extraordinary remedy" that should "be

16   used sparingly." *Id.*

17                    *ii.    Analysis*

18           First American moves the Court for judgment as a matter of law on both Plaintiff's

19   insurer bad faith and IFCA claims.[7] (*See* Def.'s Mot. at 1.) First American moves for judgment

20   as a matter of law on the grounds that: (1) Plaintiff's failure to demonstrate an unreasonably

21   denied claim bars his recovery under the IFCA claim; (2) unreasonable delay cannot form the

22   basis of Plaintiff's IFCA claim because policy limits were paid to him prior to suit; (3) because

23

---

[7] Though challenged in First American's Rule 50(b) motion, First American did not raise any specific
issues, or make distinct argument, regarding Plaintiff's insurer bad faith claim. (*See* Def.'s Mot.)

IFCA is a right-to-cure statute, and policy limits were paid, there was nothing for First American to cure; and (4) Plaintiff's lay opinion on his storage costs at trial was inadmissible hearsay and speculative. (*Id.* at 2.) First American generally argues that because IFCA is a right-to-cure statute, and because policy limits were paid to Plaintiff before suit, the IFCA claim should be dismissed because there was nothing for First American to cure. (*Id.* at 3.) First American also contends that Plaintiff failed to allege or demonstrate that his claim was unreasonably denied, and therefore, the damages awarded were outside of First American's policy obligations and the scope of IFCA.[8] (*Id.* at 4-5.)

Plaintiff responds that though First American eventually paid Plaintiff's claim, it required him to sit for an examination under oath and to store the damaged property for several months, which resulted in him incurring attorney's fees and costs for having to store the property at his expense. (Pl.'s Resp. (dkt. # 93) at 2.) Plaintiff further responds that pursuant to the Washington Court of Appeals' decision in *Beasley v. GEICO Gen. Ins. Co.*, 23 Wn. App. 2d 641 (Wash Ct. App. 2022), *Taladay*, and other cases considering IFCA claims in this District, First American's delay in providing coverage promptly resulted in an unreasonable denial of benefits as contemplated by IFCA. (*Id.* at 5-7 (collecting cases).)

On this issue, First American invited any error of which it now complains regarding the IFCA claim and it likewise failed to raise most of the arguments contained in the instant motion

---

[8] First American also argues that Plaintiff "eliminated" his IFCA claim by conceding that the only damages sought were extracontractual, which are not owed under the policy. (Def.'s Mot. at 4 (citing *Perez-Crisantos*, 187 Wn.2d at 680).) But *Perez-Crisantos* did not speak to the import of extracontractual damages on IFCA claims. It instead holds IFCA did not create an independent cause of action for violation of the insurance WACs in absence of an unreasonable denial of coverage or benefits, which Plaintiff alleged here based on First American's delay in tendering coverage for his claim. *See Perez-Crisantos*, 187 Wn.2d at 686 ("We hold that an IFCA claim cannot be predicated on a regulatory violation alone.").

1    in its pre-verdict Rule 50(a) motions at trial to properly preserve them. Even if First American

2    had properly raised these arguments in its Rule 50(a) pre-verdict motions, the Court finds

3    substantial evidence nonetheless supports the jury's verdict.

4                                    1.    Invited Error

5              As an initial matter, though First American does not frame its Rule 50(b) motions as

6    challenges to the IFCA jury instruction, it is evident First American's IFCA challenges are

7    fundamentally directed toward arguing that an unreasonable delay in payment of a claim cannot

8    form the basis of an IFCA claim where policy benefits have been paid, and thus, Plaintiff's IFCA

9    claim should be dismissed on such bases. (*See* Def.'s Mot. at 2.) To the extent First American

10   contends the Court erred in allowing that a finding of an unreasonable delay satisfies the element

11   of an unreasonable denial of a claim for coverage for an IFCA claim, any such error was invited

12   by First American based on the agreed instructions and unobjected verdict form in this case.

13             "The doctrine of invited error prevents a defendant from complaining of an error that was

14   his own fault." *Franssen Condo. Ass'n of Apartment Owners v. Country Mut. Ins. Co.*, 2023 WL

15   2242047, at *2 (W.D. Wash. Feb. 27, 2023) (quoting *United States v. Reyes-Alvarado*, 963 F.2d

16   1184, 1187 (9th Cir. 1992)). The Ninth Circuit has routinely held a party waives any challenge to

17   a jury instruction where the party provided the instruction.[9] *See id.* (citing *United States v.*

18   *Baldwin*, 987 F.2d 1432, 1437 (9th Cir. 1993); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d

19

20   _____

21   [9] Though unclear whether First American requests a new trial pursuant to Rule 59(a) based on the lack of
     elaboration in its motion, this District regularly rejects requests for new trials where the claimed
     erroneous instructions were provided by the litigants. *See, e.g.*, *Ironburg Inventions Ltd. v. Valve Corp.*,

22   2021 WL 2137868, at *12 (W.D. Wash. May 26, 2021) (finding that defendant's objection to jury
     instruction it provided "involve[d] defendant's invited error, on which it may not now rely in seeking a
     new trial"); *IDS Prop. and Casualty Ins. Co. v. Fellows*, 2017 WL 2600186, at *5 (W.D. Wash. June 15,

23   2017) (finding that plaintiff was "precluded by the invited error doctrine" from seeking new trial on
     grounds that jury instruction it provided the court was erroneous).

ORDER - 11

1488, 1493 (9th Cir. 1986) ("A party who requests an instruction invites any error contained therein and, absent an objection before the instruction is given, waives appellate review of the correctness of the instruction.")). "Waiver of a jury instruction occurs when a party considers 'the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.'" *United States v. Kaplan*, 836 F.3d 1199, 1217 (9th Cir. 2016) (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)). "Forfeited rights are reviewable for plain error, while waived rights are not." *Perez*, 116 F.3d at 845.

As more fully detailed above, the Court instructed the jury that to prove a claim under IFCA, Plaintiff had the burden of proving that: (1) First American unreasonably denied a claim for coverage; (2) Plaintiff was damaged; and (3) First American's act was the proximate cause of Plaintiff's damage. (*See* dkt. # 71 at 14 ("Jury Instruction No. 12").) The jury was instructed that to find in favor of Plaintiff's claim that First American failed to act in good faith, the jury had to find First American's failure to pay the claim sooner was unreasonable and resulted in damages to Plaintiff. (*See id*. at 16 ("Jury Instruction No. 14").) Neither party took exception to either instruction. (*See* Day 3 Trial Tr. at 376:1-382:4.) The parties agreed Jury Instructions No. 12 and No. 14 provided the necessary instructions for the IFCA claim, agreeing to the Court's response to the jury's direct inquiry regarding whether unreasonable delay in Jury Instruction No. 14 should be read into the unreasonable denial of a claim for coverage element on the IFCA claim in Jury Instruction No. 12. (*See* dkt. # 74.)

It is now clear that First American has since discovered additional authority in this District that would suggest an insurer's payment of policy benefits, despite however long a delay, requires dismissal of an IFCA claim because the insurer ultimately provided coverage for

the insured's claim.[10] (*See* Def.'s Mot. at 7-8 (citing, *e.g.*, *Young v. Safeco Ins. Co. of America*, 2022 WL 4017893, at *7-9 (W.D. Wash. Sept. 2, 2022); *Kenco Construction, Inc. v. Hartford Fire Ins. Co.*, 2020 WL 1433738, at *4 (W.D. Wash. Mar. 24, 2020)).) But that non-binding authority was not raised before this Court on summary judgment, in a disputed jury instruction, in First American's Rule 50(a) motions at trial, nor in any other form at trial. Nor have the Washington State courts definitively ruled whether an unreasonable delay in payment meets the requirement of an unreasonable denial as to this issue. Though Plaintiff cites to *Beasley* for such proposition, that portion of the Washington Court of Appeals' opinion was in consideration of whether "actual damages" in the IFCA statute could be considered to include non-economic damages based on IFCA's legislative history:

> Although nothing in IFCA's legislative history directly addresses the meaning of "actual damages," the legislative history demonstrates that the legislation was intended to protect the insureds by creating a new remedy for insureds harmed by the unreasonable delay in payment of valid insurance claims and by encouraging insurers to honor their commitments by making it illegal to unreasonably delay or deny legitimate claims.

*Beasley*, 23 Wn. App. 2d at 664, *review denied*, 200 Wn.2d 1028 (Wash. 2023). Instead, the parties agreed throughout this case that *Taladay* accurately set forth the law with respect to the IFCA claim and whether an unreasonable delay in payment of a claim could constitute an unreasonable denial of a claim for coverage.[11]

---

[10] In *Kenco*, the Court held that "an IFCA claim cannot survive where the insurer has fulfilled the claimant's entire demand." *Kenco Constr., Inc. v. Hartford Fire Ins. Co.*, 2020 WL 1433738, at *4 (collecting cases); *see also Young*, 2022 WL 4017893, at *9 ("Because Safeco paid Young the full amount of his estimate to repair the damage associated with the tenant's alterations, it did not deny him payment or coverage for purposes of IFCA.").

[11] *See Taladay*, 2016 WL 3681469, at *20 ("MetLife's unreasonable delay in payment and/or underpayment of various aspects of plaintiff's claim violated IFCA"); *Cedar Grove Composting v. Ironshore Specialty Ins.*, 2015 WL 3473465, at *6 (W.D. Wash. June 2, 2015) ("A refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary");

1        Therefore, First American has abandoned any argument the jury was not adequately

2   instructed regarding the IFCA claim or that the evidence did not permit the provided

3   instructions. *See Kaplan*, 836 F.3d at 1216 (citing *United States v. Olano*, 507 U.S. 725, 733

4   (1993)). Because First American stipulated to the jury instructions on the IFCA claim, it has

5   affirmatively waived any such challenges. *See Logtale, Ltd. v. IKOR, Inc.*, 738 Fed. App'x. 422,

6   424 (9th Cir. 2018) (citing *Gilchrist*, 803 F.2d at 1493).

7                         2.    Rule 50(b)

8        To the extent First American's challenges can be considered distinct from the agreed jury

9   instructions and not waived, First American also failed to properly preserve most of its Rule

10  50(b) motions. To reiterate, at trial, First American raised in its pre-verdict motions: (1) that

11  dismissal of all claims brought by Kaiser Enterprises was warranted; (2) that Plaintiff failed to

12  present evidence of damages for his IFCA claim; (3) that Plaintiff failed to file a 20-day notice of

13  intent to file suit pursuant to IFCA; (4) that the 20-day IFCA notice was insufficient because

14  Plaintiff failed to identify any wrongful denial or underpayment of benefits that First American

15  could remedy during the 20-day period; and (5) that Plaintiff failed to demonstrate an unfair or

16  deceptive act that proximately caused Plaintiff's storage costs for the CPA claim. (*See* Day 2

17  Trial Tr. at 364:10-372:13.)

18

19  *Morella v. Safeco Ins. Co. of Illinois*, 2013 WL 1562032, at *3 (W.D. Wash. April 12, 2013) ("[T]he
    Court concludes that an insurer cannot escape IFCA simply by accepting a claim and paying or offering

20  to pay an unreasonable amount. The benefits to which the first-party insured is entitled are generally
    described as payment of the reasonable expenses or losses incurred as a result of an insured event.");

21  *Freeman v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 2891167, at *3 (W.D. Wash. July 16, 2012) ("For
    purposes of an insured's extracontractual claim, a failure to pay the amount the insured requests is a

22  denial of coverage."); *see also Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co.*, 2017
    WL 6409161, at *1 (W.D. Wash. June 2, 2017) (granting leave to amend to allege an IFCA claim based

23  on the insurer's "refus[al] to process Plaintiff's claim in a reasonably prompt manner"); *Kifer v. Am.*
    *Family Mut. Ins.*, 2015 WL 1203068, at *5 (W.D. Wash. Feb. 10, 2015) (finding question of fact existed
    on IFCA claim even though the insurer "eventually paid the full amount").

ORDER - 14

1    However, in the instant motion, First American now pivots to arguing: (1) that Plaintiff's

2    failure to demonstrate a wrongfully denied claim bars recovery under IFCA; (2) any alleged

3    unreasonable delay cannot form the basis of Plaintiff's IFCA claim because policy limits were

4    paid to Plaintiff before suit; (3) because IFCA is a right-to-cure statute, and policy limits were

5    paid to Plaintiff, there was nothing for First American to cure; and (4) that Plaintiff's lay opinion

6    on his storage costs at trial was inadmissible hearsay and speculative. (*See* Def.'s Mot. at 2.) The

7    only proper Rule 50(b) motion that is arguably raised would relate to First American's challenge

8    that the 20-day IFCA notice was insufficient because it failed to identify what First American

9    could do to cure during that period to prevent suit from Plaintiff. The remainder of First

10   American's Rule 50(b) arguments regarding the IFCA claim, and/or the sufficiency of the

11   evidence with respect to Plaintiff's damages for the IFCA claim, were not raised at trial prior to

12   the jury's verdict.[12]

13              3.    Substantial Evidence

14   Because First American did not properly raise arguments included in its post-trial Rule

15   50(b) motion prior to the jury's verdict—specifically, (1) that Plaintiff's failure to demonstrate a

16   wrongfully denied claim bars recovery under IFCA; (2) that unreasonable delay cannot form the

17   basis of Plaintiff's IFCA claim because policy limits were paid; and (3) that Plaintiff's lay

18   opinion on his storage costs at trial was inadmissible—such arguments should not be considered

19   with respect to whether there was substantial evidence to sustain the jury's verdict. *See E.E.O.C.*,

20

21   [12] To the extent First American's Rule 50(b) arguments can be interpreted as having been raised
     previously, it is not this Court's job to manufacture arguments where not clearly presented. First
22   American's arguments on the IFCA claim, without clear argument or citation to the supporting caselaw
     now presented to the Court, was insufficient to raise that the IFCA claim was deficient prior to the jury's
23   verdict. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("Our adversarial
     system relies on the advocates to inform the discussion and raise the issues to the court . . . We require
     contentions to be accompanied by reasons.").

581 F.3d at 961-62; *Freund*, 347 F.3d at 761. Instead, the Court is limited to reviewing the jury's verdict for plain error on those arguments and should reverse only if such error would result in a "manifest miscarriage of justice." *See Janes*, 279 F.3d at 888. "This exception . . . permits only extraordinarily deferential review that is limited to whether there was *any* evidence to support the jury's verdict." *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001). Nonetheless, regardless of whether the jury's verdict is reviewed for substantial evidence or for plain error, the evidence viewed in the light most favorable to Plaintiff supports the jury's verdict on Plaintiff's IFCA claim and damages.

IFCA provides a "first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs[.]"[13] RCW 48.30.015(1). IFCA requires a first-party claimant to "provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner" twenty days prior to filing an IFCA action. RCW 48.30.015(8)(a). If the insurer fails to resolve the basis of the action, the claimant may bring their action without further notice. RCW 48.30.015(8)(b). Consequently, to bring a claim under IFCA, the insured must only establish that their insurer has unreasonably denied: (1) a claim for coverage or (2) payment of benefits. *Id*.; *see also Bennett v. Homesite Insurance Company*, 636 F. Supp. 3d 1267, 1274 (W.D. Wash. 2022); *Dentists Ins. Co. v. Yousefian*, 2023 WL 4106220, at *17 (W.D. Wash. June 21, 2023).

---

[13] In addition, and relevant to the jury's finding for Plaintiff on the insurer bad faith claim, "claims for the breach of the duty of good faith . . . allow for recovery of expenses; consequential damages; and general tort damages, including noneconomic damages such as emotional distress caused by the breach of the duty of good faith." *See Beasley*, 23 Wn. App. 2d at 661 (internal quotations and citations omitted).

First, as to First American's challenge that the 20-day IFCA notice was insufficient for failing to designate a cure, a near identical challenge was previously dismissed by the Court on summary judgment because Plaintiff provided the necessary information in the notice required by IFCA. (*See* dkt. # 34 at 17-19 (citing RCW 48.30.015(8)).) The statutory language of RCW 48.30.015 itself does not require the insured to set forth what would be required to cure during the 20-day period. S*ee Dolsen Companies v. Bedivere Ins. Co.*, 2018 WL 3603059, at *3 (E.D. Wash. May 16, 2018) ("Notably, the IFCA notice form does not require the insured to identify the specific benefits sought, but rather only requires the insured to identify the policy (or policies) at issue and the legal basis for the alleged violations."). There is also no dispute the 20-day IFCA notice was sent by Plaintiff, received by First American, and it was admitted into evidence at trial for the jury's consideration. (*See* Day 2 Trial Tr. at 365:21-368:4; *see also* Tr. Ex. List at 1 ("Communications by Defendant").)

Next, as considered above, the parties agreed in the IFCA context that "a refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary." *Taladay*, 2016 WL 3681469, at *2 (quoting *Cedar Grove Composting, Inc.*, 2015 WL 3473465, at *6 (W.D. Wash. June 2, 2015)). Reviewing the evidence in the light most favorable to Plaintiff, the Court finds substantial evidence exists to find in favor of Plaintiff on the IFCA claim.

As noted above, the evidence submitted at trial includes Plaintiff's testimony at trial regarding his storage costs that remained unobjected to on any basis of hearsay or speculation. (*See* Day 1 Trial Tr. at 157:7-14.) Additionally, Plaintiff testified and submitted exhibited evidence of Plaintiff and First American's communications concerning First American's request that Plaintiff maintain the damaged property pending First American's coverage decision and its

1    willingness to cover the cost of storage containers in the pendency of its coverage determination.

2    (*See* Day 1 Trial Tr. at 157:23-166:2; dkt. # 72 at 1 (Trial Exs. 12 ("Communications by

3    Defendant"); 48 ("First American's Check to Gochev – Storage pod replacement"); 111-13, 115,

4    121, 124 (Email communications from First American to Plaintiff and his public adjuster)).)

5    Moreover, Plaintiff's public adjuster Darrell Harber testified that First American required

6    Plaintiff to maintain the damaged property pending its coverage determination. (*See* Day 2 Trial

7    Tr. at 204:23-205:1, 209:22-210:7.) Plaintiff's expert Stephen Strzelec testified First American's

8    prolonged coverage decision was unreasonable because the known value of Plaintiff's personal

9    property clearly exceeded available coverage under the policy, with little need to consider

10    whether the damaged property was in fact used for business purposes due to the limited coverage

11    available. (*See id.* at 328-17-331:1.)

12        In sum, First American's Motion is denied. Despite First American's preferred

13    interpretation of the evidence, the evidence elicited at trial was more than adequate to support the

14    jury's conclusion that First American unreasonably delayed Plaintiff's claim for coverage and

15    that Plaintiff was harmed by the delay for the IFCA claim.

16        **B.**    **Plaintiff's Fees Motion and Motion to Modify Judgment**

17        Next, Plaintiff's Fees Motion requests that the Court: (1) enter a new judgment in favor

18    of Plaintiff for $28,800.00, "enhancing" and trebling the jury's awarded damages; (2) award

19    attorney's fees in the amount of $114,810.00; and (3) award costs in the amount of $25,964.42.

20    (Pl.'s Fees Mot. at 11.) Plaintiff further requests the Court apply a multiplier of two by the

21    lodestar method to increase the attorney's fees award to $229,620.00. (*Id.*) Plaintiff's Motion to

22    Modify Judgment requests that the Court modify judgment in favor of Plaintiff for $28,800.00,

23    plus costs of $25,964.42, and attorney's fees of $114,810.00. (Pl.'s Mot. at 1-2.)

On reply, Plaintiff's counsel requests an additional award of $9,900 in fees for the time expended to respond to First American's fees opposition. (Pl.'s Fees Reply (dkt. # 99) at 8; Third Brooks Decl. (dkt. # 100).) Plaintiff's counsel submits that he billed an additional 22 hours to "engage[] in researching, reading case law, and in drafting and writing the response and reply." (Third Brooks Decl. at ¶ 2.)

First American requests that Plaintiff's claim be reduced by $19,597.50—the amount it calculates Plaintiff's counsel incurred to advise Plaintiff as to pre-litigation claim handling.[14] (Def.'s Fees Resp. (dkt. # 92) at 1, 5.) First American argues RCW 48.40.015 does not directly authorize an award of pre-litigation attorney's fees. (*Id.* at 7.) First American did not provide any response or objection to Plaintiff's asserted costs nor Plaintiff's fees request submitted on reply. (*See id.*) First American relies solely upon its opposition advanced to Plaintiffs' Fees Motion to rebut Plaintiff's Motion to Modify Judgment. (*See* dkt. # 92.)

The Court will individually examine Plaintiff's enhanced damages, fees, and costs requests:

               i.     *Treble and Enhanced Damages*

First, Plaintiff requests that Plaintiff's awarded damages be enhanced because the IFCA statute does not mention consideration of failure to mitigate and/or contributory negligence as defenses and because IFCA allows for the trebling of damages at the Court's discretion. (Pl.'s Fees Mot. at 9.) Plaintiff argues that because the IFCA statute does not mention a mitigation or contributory negligence defense, this requires that the jury's full award of $9,600 be reinstated,

---

[14] First American primarily argued in its response that the attorney's fee request should be denied in whole because it was entitled to judgment as a matter of law. (*See* Def.'s Fees Resp. at 1, 5-9.)

and that because the Court can treble awarded damages for a successful IFCA action, the jury's

damages award should thus be $28,800. (*Id.* at 9-10.)

First American responds that there is no basis to treble awarded damages as punitive and

that it is otherwise not warranted on the Court's discretion. (Def.'s Fees Resp. at 10.) First

American argues failure to mitigate also applies to the jury's award because the jury found

Plaintiff failed to exercise ordinary care to avoid or minimize his damages and because Plaintiff

offers no authority to the contrary. (*Id.* at 11-12.)

After a finding that an insurer has acted unreasonably in denying a claim for coverage or

payment of benefits, IFCA provides that the superior court may increase the total award of

damages to an amount not to exceed three times the actual damages. RCW 48.30.015(2).

However, because the Seventh Amendment provides that a party in federal court is entitled to a

jury on the issue of punitive damages, courts in this District have determined that Fed. R. Civ. P.

38 and Fed. R. Civ. P. 39 require a jury finding on a claim for increased damages under RCW

48.30.015(2). *See Nw. Mut. Life Ins. Co. v. Koch*, 771 F. Supp. 2d 1253, 1256 (W.D. Wash.

2009); *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.*, 2012 WL 5992286, at *1 (W.D. Wash. Nov.

30, 2012). As explained by the Court in *F.C. Bloxom Co.*:

> Whereas Washington's legislature can commit the decision to enhance IFCA damages to state court judges, this court cannot enhance damages unless the Seventh Amendment permits it. [Fed. R. Civ. P. 38] dictates that the "right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."

2012 WL 5992286, at *4.

Here, the jury in this case did not determine an enhanced damage award was warranted in

its verdict. (*See* dkt. # 75.) Plaintiff also did not submit a verdict form or raise any objection to

the verdict form provided to the jury, on the basis that it omitted a question on whether treble

1    damages should be awarded. (*See* Day 3 Trial Tr. at 375:20-382:4; *see also* dkt. # 50 at 41-42.)

2    Because the Seventh Amendment and Rule 38 require the jury to determine any IFCA enhanced

3    damage award in federal court, Plaintiff cannot receive treble damages in this case. *See F.C.*

4    *Bloxom Co.*, 2012 WL 5992286, at *6.

5           As to Plaintiff's request for enhanced damages, "an insurer asserting an affirmative

6    defense bears the burden of proving the facts necessary to establish it."[15] *Taladay*, 2016 WL

7    3681469, at *15. Here, the jury found that First American met its burden in part based on its

8    apportionment of fault on the verdict form, which required the jury to find that Plaintiff failed to

9    exercise ordinary care to avoid or minimize his damages. (*See* dkt. ## 71 at 23 ("First American

10   has the burden to prove Mr. Gochev's failure to exercise ordinary care and the amount of

11   damages, if any, that would have been minimized or avoided."), 75 at 3.) Plaintiff has also failed

12   to set forth any authority that IFCA damages cannot be reduced for failure to mitigate.

13   Consequently, Plaintiff's requests that the Court enhance and treble the $5,760 in awarded

14   damages by the jury is denied.

15                     *ii.    Lodestar Analysis*

16          Next, Plaintiff's counsel argues he is entitled to attorney's fees pursuant to *Olympic*

17   *Steamship v. Continental Ins. Co.*, 117 Wn.2d 37 (Wash. 1991) and RCW 48.30.015(3).[16] (Pl.'s

18   Fees Mot. at 1.) Under the lodestar analysis, Plaintiff's counsel contends a reasonable hourly rate

19

20   ─────────────────────────
     [15] Failure to mitigate has been utilized as an affirmative defense in the insurance context. *See Trident*
21   *Seafoods Corp. v. Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189, 1204-05 (W.D. Wash.
     2012); *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 76 (Wash. Ct. App. 2014)).

22   [16] Pursuant to RCW 48.30.015(3), "[t]he superior court shall, after a finding of unreasonable denial of a
     claim for coverage or payment of benefits . . . award reasonable attorneys' fees and actual and statutory
23   litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is
     the prevailing party in such an action."

ORDER - 21

for his services was $450 an hour, which he argues is reasonable given his 30 years of experience and based on the declarations of two attorneys in the Seattle community.[17] (*Id.* at 3-4.) Plaintiff's counsel notes he expended 239.3 hours on this case, at a rate of $450 an hour, for his fees request of $107,685.00.00, and that his legal assistant expended 57 hours, at a rate of $125 an hour, for his legal assistant fees request of $7,125.00. (*Id.* at 5 (citing Second Brooks Decl. (dkt. # 83) at ¶¶ 6, 18, 20, 22-23).)

Under *Olympic Steamship*, an "insured party is entitled to attorney's fees 'in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract.'" *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1437 (9th Cir. 1995) (quoting *Olympic Steamship Co.*, 117 Wn.2d at 53). The only limitation to this rule is that no fees are awarded when the insurer does not dispute coverage, but merely disputes the value of the claim.[18] *Id.* As noted above, the IFCA statute provides for an award of attorney's fees. RCW 48.30.015(1), (3).

In analyzing the propriety of attorney's fees to be awarded to a party, district courts in the Ninth Circuit undertake a two-step "lodestar" analysis. *Welch v. Metropolitan Life Ins.*, 480 F.3d 942, 945 (9th Cir. 2007). First, courts "establish[ ] a lodestar by multiplying the number of hours reasonably expended . . . by a reasonable hourly rate." *Welch*, 480 F.3d at 945. "The party

---

[17] Plaintiff provided the declarations of Seattle attorneys Ray Kahler and Kenneth Friedman, who both reviewed Plaintiff's fee application and determined his hourly rate was reasonable. (*See* Kahler Decl. (dkt. # 84) at ¶ 5; Friedman Decl. (dkt. # 85) at ¶ 6.)

[18] The Washington Supreme Court has clarified that "[c]overage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 147 (Wash. 1997). In cases, where "the insurer admitted there was some coverage but disputed the scope of the coverage," the *Olympic Steamship* rule has been found to apply. *Id.* (citing *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 33 (Wash. 1995)).

ORDER - 22

1    seeking fees bears the burden of documenting the hours expended . . . and must submit evidence

2    supporting those hours and the rates claimed." *Id.* at 945-46.

3                1.   <u>Reasonable Rate</u>

4          In determining reasonable hourly rates, the Court must look to the "prevailing market

5    rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).

6    "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

7    community, and rate determinations in other cases, particularly those setting a rate for the

8    plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers

9    of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The relevant community is the

10   forum in which the district court sits. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979

11   (9th Cir. 2008).

12         Based on the submitted declarations from attorneys practicing in this District, and First

13   American's lack of objection, the Court finds that Plaintiff's counsel's hourly rate of $450 is

14   commensurate with his 30 years of experience and the prevailing market rate in the Seattle

15   community. (*See* Second Brooks Decl. at ¶¶ 2-3, 6; *see also* Kahler Decl. at ¶ 5; Friedman Decl.

16   at ¶ 6.)

17                2.   <u>Hours Reasonably Expended</u>

18         In determining whether the hours expended by counsel were reasonable, the Court is also

19   required to independently determine whether the Plaintiff sustained its burden to demonstrate the

20   hours expended was reasonable. *MKB Constructors v. Am. Zurich Ins. Co.*, 83 F. Supp. 3d 1078,

21   1087 (W.D. Wash. 2015) (citations omitted); *see also SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127,

22   144 (Wash. 2014) ("In determining an award of attorney's fees, the trial court may not rely

23   solely on counsel's fee affidavit."). The court has discretion to make reductions, "no greater than

10 percent," without providing "specific explanation," but must explain larger reductions.
*See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

As to Plaintiff's counsel's hours, Plaintiff's counsel has provided evidence he expended 239.3 hours on this case for a lodestar fee of $107,685.00. (*See* Second Brooks Decl., Ex. 1 (dkt. # 83-1) at 9.) First American takes exception to hours expended by Plaintiff's counsel for pre-litigation claims handling and requests that Plaintiff's claim be reduced accordingly by $19,597.50. (Def.'s Fees Resp. at 1, 5.)

### a.     Pre-Litigation Fees

To start, the Court declines to reduce Plaintiff's counsel's attorney's fees based on the time expended by Plaintiff's counsel pre-litigation. First American does not cite any authority demonstrating *Olympic Steamship* nor RCW 48.030.015(1) fail to provide for attorney's fees for pre-litigation activities. (*See* Def.'s Fees Resp. at 5, 7.) RCW 48.40.015(1) provides for the recovery of "actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs," which is not on its face exclusive of attorney's fees and costs arising prior to when litigation formally commenced.

### b.     Unproductive Time and Block Billing

Under Washington law, "[t]he total hours an attorney has recorded for work in a case is to be discounted for hours spent on 'unsuccessful claims . . . or otherwise unproductive time.'" *Miller v. Kenny*, 180 Wn. App. 772, 823 (Wash. Ct. App. 2014) (quoting *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597 (Wash. 1983)). In addition, "courts have repeatedly found that counsel's practice of 'lumping together multiple tasks[] mak[es] it impossible to evaluate their reasonableness.'" *MKB Constructors*, 83 F. Supp. 3d at 1087 (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004)). As a result,

1    the court may exclude from the lodestar "any hours that are "excessive, redundant, or otherwise

2    unnecessary," *Welch*, 480 F.3d at 946 (internal quotations and citation omitted), and has the

3    "authority to reduce hours that are billed in block format." *Id. at* 948.

4           Block billing is "the time-keeping method by which each lawyer and legal assistant

5    enters the total daily time spent working on a case, rather than itemizing the time expended on

6    specific tasks." *Welch*, 480 F.3d at 945 n.2 (internal quotations omitted); *see also Lahiri v.*

7    *Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1223 (9th Cir. 2010) (finding court did

8    not abuse its discretion by reducing 80% of attorney's billable hours by 30% for block billing).

9    Such hours may be excluded either by "conduct[ing] an hour-by-hour analysis of the fee

10   request," or making "percentage cuts" to the "number of hours claimed." *Gonzalez v. City of*

11   *Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal quotations and citations omitted).

12          On analysis of Plaintiff's counsel's hours, the record reveals clear instances of block

13   billing or hours that could be considered redundant and/or unnecessary. (*See* Second Brooks

14   Decl., Ex. 1.) For example, on December 26, 2022, Plaintiff's counsel block billed eight hours to

15   review Plaintiff's claims file, determine topics for the expert report, draft a summary, and

16   highlight documents for the expert. (*Id.* at 5.) On September 4, 2023, Plaintiff's counsel billed

17   four hours to re-write Plaintiff's response to First American's motion for summary judgment.

18   (*Id.* at 6.) The next day, September 5, 2023, Plaintiff's counsel block billed seven hours to

19   continue to update the response, receive feedback from Plaintiff's expert and Plaintiff, correct

20   declarations, and file with the Court. (*Id.* at 7.) For the instant motion, Plaintiff's counsel block

21   billed his time as six hours, ten hours, and six hours to "engage[] in researching, reading case

22   law, and in drafting and writing the response and reply." (*See* Third Brooks Decl. at ¶ 2.)

23

In reviewing these and similar entries in Plaintiff's counsel's billing records, the Court is unable to determine exactly how much attorney time was spent on redundant efforts or on the block billed tasks. "'An explicit hour-by-hour analysis of [the] lawyer's time sheet' is unnecessary as long as the court considers relevant factors and gives reasons for the amount awarded." *MKB Constructors*, 83 F. Supp. 3d at 1090 (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 54 Wn. App. 180, 187 (Wash Ct. App. 1989), *rev'd on other grounds,* 114 Wn.2d 677 (Wash. 1990)). Therefore, having reviewed Plaintiff's counsel's billing records, the Court finds a reduction for the redundant and blocked entries is appropriate to account for the hours spent on unproductive activities in this case.

### c.   Unsuccessful Claims

In addition, where a plaintiff succeeds on only some of his claims, the court must consider: (1) whether the unsuccessful claims were related to the claims on which he succeeded, and (2) whether the plaintiff achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995).

On this aspect, the Court notes Plaintiff was successful on only his bad faith and IFCA claims in this action. Plaintiff's breach of insurance contract claim was dismissed at summary judgment (dkt. # 32 at 10-12), the jury found for First American on the CPA claim (dkt. # 75 at 2), and Kaiser Enterprises was dismissed from this action as a plaintiff by stipulation of the parties after First American's Rule 50(a) motion (dkt. # 65). Though the unsuccessful claims were related to those which Plaintiff succeeded on, the jury ultimately awarded Plaintiff only

1    $5,760 in damages in this case.[19] (*See* dkt. # 75 at 3.) A moderate reduction for Plaintiff's limited

2    success is therefore also appropriate. *See McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th

3    Cir. 2009) (finding that "a comparison of damages awarded to damages sought" is relevant to a

4    determination of the reasonable fee award).

5                              3.      Lodestar Adjustment

6            Second, and only "in rare and exceptional cases, the district court may adjust the lodestar

7    upward or downward using a multiplier based on facts not subsumed in the initial lodestar

8    calculation." *Welch*, 480 F.3d at 946. "The lodestar amount is presumptively the reasonable fee

9    amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward

10   only in rare and exceptional cases, supported by [] specific evidence on the record and detailed

11   findings . . . ." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

12           As to whether an adjustment to the lodestar upward or downward for the fees using a

13   multiplier is appropriate, there is nothing in the record that would countenance toward this being

14   a rare or exceptional case. *See Welch*, 480 F.3d at 945. This was a relatively routine insurance

15   dispute, with minimal motions practice and no depositions, which required only three trial days

16   and four witnesses. As such, the Court declines to make an adjustment to the lodestar amount.

17           In conclusion as to Plaintiff's counsel's fees, when a reduction in the fee award is

18   appropriate, the court "may attempt to identify specific hours that should be eliminated, or it may

19   simply reduce the award to account for the limited success." *Schwarz*, 73 F.3d at 904 (quoting

20   *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). Here, considering Plaintiff's limited success

21

22   _____

23   [19] Segregating Plaintiff's counsel's unsuccessful time on the breach of contract and CPA claims from the
     bad faith and IFCA claims would be difficult given their factual relation. *See MKB Constructors*, 83 F.
     Supp. 3d at 1089 (finding it was not possible to segregate time spent on successful claims for breach of
     contract, violation of IFCA, and bad faith from unsuccessful CPA claims).

on his claims and having carefully reviewed Plaintiff's counsel's billing records and finding

multiple instances of block billing and/or the billing of redundant and unnecessary hours, the

Court finds a 20% across-the-board reduction to Plaintiff's counsel's requested fees is

appropriate.

### iii.    Non-Attorney Fees

The Court may also award reasonable fees for work performed by an attorney's

non-lawyer personnel. *See Absher Const. Co. v. Kent School Dist. No. 415*, 79 Wn. App. 841,

845-46 (Wash. Ct. App. 1995). Plaintiff seeks legal assistant fees for 57 hours of work at an

hourly rate of $125. (Second Brooks Decl. at ¶ 20, Ex. 1 at 9-10.) First American has not

contested these fees. Consequently, the Court will award these fees in the total requested amount

of $7,125.00 to Plaintiff's counsel.

### iv.    Costs

Finally, Plaintiff's counsel requests costs in the amount of $25,964.42 in part due to his

hiring of expert witnesses. (Pl.'s Fees Mot. at 5.) IFCA provides for the recovery of "actual and

statutory litigation costs, including expert witness fees." RCW 48.30.015(3). In insurance

coverage disputes, attorney's fee awards include litigation expenses and costs. *See Panorama*

*Village Condominium Owners Ass'n Bd. Of Directors v. Allstate Ins. Co.*, 144 Wn.2d 130, 143

(Wash. 2001).

Plaintiff must first move by separate motion to tax costs under the procedures set forth in

Local Civil Rule 54(d), after this Court's entry of amended judgment, as such motion is to be

ruled on by the Clerk, rather than the Court. *See* LCR 54(d)(1) ("The party in whose favor a

judgment is rendered, and who seeks to recover costs, shall, within twenty-one days after the

entry of judgment, file and serve a motion for costs and necessary disbursements, also known as

a bill of costs."). Under LCR 54(d)(1), all costs must be specified so the nature of the charge can be readily understood, and therefore, a line-item list of costs will not be sufficient validation of each requested cost. Plaintiff must provide a Bill of Costs form (AO-133) and invoices for all requested costs listed in any such motion. Plaintiff must also fully redact all provided documentation pursuant to Fed. R. Civ. P. 5.2 and LCR 5.2.

In sum, based on the Court's lodestar analysis, declination of a multiplier to the lodestar amount, and finding that a 20% across-the-board reduction is warranted for Plaintiff's counsel's fees, the Court finds that Plaintiff's counsel is awarded an attorney's fee in the amount of $99,768.00, inclusive of Plaintiff's counsel's attorney's fees request on reply, in addition to legal assistant fees awarded in the amount of $7,125.00.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby ORDERS that:

(1)      First American's Motion (dkt. # 88) is DENIED;

(2)      Plaintiff's Fees Motion (dkt. # 82) is GRANTED in part and DENIED in part. Plaintiff is awarded combined attorney's fees in the amount of $106,893.00;

(3)      Plaintiff's Motion to Modify Judgment (dkt. # 86) is GRANTED in part and DENIED in part. The Court will file a superseding judgment with this Order to include the jury's award of $5,760.00 in damages and the Court's award of $106,893.00 in attorney's fees; and

(4)      The Clerk is directed to send a copy of this Order to the parties.

Dated this 19th day of January, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge